583 P.2d 290 (1978)
Kathryn E. WILLIAMS and Colorado National Bank of Denver, as Executors of the Estate of Henry P. Williams, Jr., Deceased, Plaintiffs-Appellants,
v.
John M. STIRLING, Defendant-Appellee,
Arrowhead Land Corporation, a Colorado Corporation, Sunlight Ranch Co., a/k/a Sunlight, a Colorado Corporation, and the First National Bank of Glenwood Springs, a National Banking Corporation, Berenice McDonald, as the Public Trustee of Garfield County, Colorado, and all unknown persons who claim any interest in the subject matter of this action, Defendants.
No. 77-106.
Colorado Court of Appeals, Div. I.
March 16, 1978.
Rehearing Denied May 11, 1978.
Certiorari Denied August 28, 1978.
*291 Petre, Zimmerman & Shelton, P.C., Dan Kerst, Robert Zimmerman, Glenwood Springs, for plaintiffs-appellants.
William D. Jochems, Gerald D. Hartert, Glenwood Springs, for defendant-appellee.
ENOCH, Judge.
Plaintiffs appeal from a judgment entered in an action to quiet title to 240 acres of real estate located in Garfield County. We affirm.
During 1964 and 1965, plaintiffs' predecessor in interest, John Higgs, acquired 810 acres which included the land in question. In 1965, in exchange for corporate stock, Higgs deeded 190 acres to Sunlight Ranch Co., a corporation formed in January 1965, for the purpose of constructing and operating a ski area. Higgs served as Sunlight's promoter, president, director, and general manager from the time of Sunlight's inception until his removal as president and general manager on December 30, 1968.
On October 23, 1968, Higgs entered into a written agreement with Arrowhead Corp. whereby Higgs would convey 240 acres of land to Arrowhead, reserving to Sunlight certain easements, in consideration for $75,000 cash, stock, payment of certain surveying costs, and Arrowhead's participation in a land development program in conjunction with Sunlight and operation of Sunlight's Ski area. Upon execution of the agreement, $10,000 was paid, and Arrowhead stock was transferred. The remaining $65,000 was to be paid in 10 equal annual installments, with the obligation to be evidenced by a promissory note secured by a deed of trust. On November 26, 1968, Higgs conveyed to Arrowhead by deed approximately 120 of the 240 acres, reserving unto himself, his successors or assigns, the easements which he had earlier designated were to go to Sunlight. The promissory note and deed of trust were never executed.
*292 In 1969, judgment in an unrelated action was entered against Arrowhead, pursuant to which an execution issued, and all 240 acres which were the subject of the Higgs-Arrowhead agreement, deeded as well as undeeded, were sold to defendant Stirling at a sheriff's sale. On October 26, 1970, a sheriff's deed covering the entire 240 acres was issued to Stirling.
On June 8, 1973, plaintiffs acquired their interests in the 240 acres in a series of transactions: First, three persons who had acquired Higgs' remaining property conveyed their interests therein to plaintiffs; second, Higgs conveyed to plaintiffs all his interests in the undeeded portion of the original 810 acres owned by him, including all real estate covered by the Arrowhead agreement as well as the easements reserved in the Arrowhead deed; third, Higgs assigned all his interest in the Higgs-Arrowhead agreement to plaintiffs.
Plaintiffs brought this action to determine the rights of the respective parties in the 240 acres. Sunlight was made a party defendant to the action. Sunlight claimed one easement over the disputed acreage, a 3.44 acre area designated as the Ute Ski Trail, which had been constructed in 1966 at Higgs' direction with Sunlight's funds, and which had been continually used in connection with the Sunlight Ski Area since the opening of its initial ski season in 1966-67.
The trial court found that Sunlight acquired title to the easements reserved by Higgs in the deed to Arrowhead via a passive trust, but that Sunlight, through statements made in briefs and at trial, had expressly abandoned them, except for the Ute Ski Trail easement. Consequently, the easements were held to be extinguished. The court held Stirling to be the owner in fee simple of the deeded 120 acres, subject, however, to Sunlight's Ute Ski Trail easement, plaintiffs' vendor's lien to secure the payment of $65,000 principal plus interest, and "any other rights which may still be valid and subsisting in plaintiffs as assignees of the rights to John Higgs under the October 23, 1968 agreement." Conversely, plaintiffs were held to be the owners of the undeeded 120 acres, subject to Sunlight's Ute Ski Trail easement and "an obligation to convey such property to [Stirling] upon payment in full of the obligation secured by the vendor's lien, . . . as that obligation may be modified by other rights which may still be valid and subsisting in plaintiffs as assignees of the rights of John Higgs under the October 23, 1968 agreement."
This appeal concerns the ownership of the easements on both the 120 acres deeded and the 120 acres undeeded land, and the contract obligation of plaintiff and Stirling as to the undeeded 120 acres. Neither the ownership of the land, as determined by the trial court, nor the vested right of Sunlight in the Ute Ski Trail easement is challenged.

I.
Plaintiffs contend that the trial court erred in finding a trust existed for Sunlight's benefit as to the easements on the deeded 120 acres, and that it should have been determined that plaintiffs owned those easements. We disagree.
Although there is no evidence other than the language of the Higgs-Arrowhead agreement indicating an intent on Higgs' part to create a trust benefitting Sunlight, the circumstances warrant the imposition of an equitable trust. Despite the fact that Higgs retained an interest in his own land, rather than acquired new interests in other property, he, holding several fiduciary positions in relation to Sunlight, had a duty not to engage in enterprises directly in competition with, and necessarily having an injurious, crippling, or detrimental effect upon Sunlight's business. Burg v. Horn, 380 F.2d 897 (2d Cir. 1967); Raines v. Toney, 228 Ark. 1170, 313 S.W.2d 802; Parsons Mobile Products, Inc. v. Remmert, 216 Kan. 256, 531 P.2d 428. Cf. Colorado and Utah Coal v. Harris, 97 Colo. 309, 49 P.2d 429. The language utilized in the deed from Higgs to Arrowhead for the 120 acres, being identical to that in the agreement between Higgs and Arrowhead, indicates that the easements were contemplated not for private but for commercial use. The *293 easements were to be used not only for ski trails, but also for erection of ski lifts, maintenance areas, parking and other supporting facilities consistent only with a commercial operation. If not intended to benefit Sunlight's ski area, then necessarily they were intended to benefit some other nearby commercial ski area which either Higgs or prospective purchasers of his land would construct and operate, and this necessarily would interfere with Sunlight's business and justify the imposition of a trust.

II.
Furthermore, because of the circumstances justifying the imposition of the trust, and because of the language of the deed indicating that the easements benefitted a ski area, together with the absence of any other local ski area, we conclude that the easements reserved in the deed were appurtenant to Sunlight's land. See Durkee v. Jones, 27 Colo. 159, 60 P. 618; Westland Nursing Home, Inc. v. Benson, 33 Colo. App. 245, 517 P.2d 862. As such, they could not exist separate and apart from Sunlight's land, see, e. g., Ocean Shore R. R. v. Doelger, 179 Cal.App.2d 222, 3 Cal.Rptr. 706; Yount v. Lowe, 288 N.C. 90, 215 S.E.2d 563; Union Falls Power Co. v. Marinette County, 238 Wis. 134, 298 N.W. 598, and they could not be converted into personal easements. McClintic-Marshall Co. v. Ford Motor Co., 254 Mich. 305, 236 N.W. 792.
Because the easements reserved in the deeded 120 acres, as well as those stated in the Higgs-Arrowhead agreement which pertain to the undeeded 120 acres, are easements that could relate only to the use of and for the benefit of Sunlight, Sunlight could elect to extinguish the trust, see 5 A. Scott, Trusts § 481.3 (3d ed. 1967); Young v. Bradley, 142 F.2d 658 (6th Cir. 1944); Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, and it could abandon its interest in those easements referred to in the Higgs-Arrowhead agreement. Sunlight did abandon its interest, as the trial court found; therefore, the trust was extinguished as to the deeded land and the undeeded portion of the property was freed from all easements except the Ute Ski Trail easement.
In summary, plaintiffs own, in fee simple, the undeeded 120 acres subject to an obligation to convey this acreage, now freed from all easements except Sunlight's Ute Ski Trail easement, to Stirling in accordance with the terms and conditions of the Higgs-Arrowhead agreement. Stirling owns the deeded 120 acres, freed of all easements except Sunlight's Ute Trail easement, and subject to plaintiffs' vendor's lien to secure the payment of $65,000 principal plus interest and compliance with the terms and conditions of the Higgs-Arrowhead agreement. Stirling has the right to purchase plaintiffs' 120 acres, freed from all easements except Sunlight's Ute Ski Trail easement, subject, however, to the terms and conditions of the agreement.
Judgment affirmed.
COYTE and PIERCE, JJ., concur.