C.C. COLLIE and Base 9
Condominiums, Inc.,
Plaintiffs–Appellees,

v.

James C. BECKNELL,
Defendant–Appellant.

No. 86CA0791.

Colorado Court of Appeals,
Div. IV.

May 12, 1988.

Rehearing Denied June 9, 1988.

Certiorari Denied Oct. 11, 1988.

Carpenter & Klatskin, P.C., Frederick B. Skillern, Denver, for plaintiffs-appellees.

Callan, Lass & Associates, P.C., Dennis E. Callan, Breckenridge, for defendant-appellant.

BABCOCK, Judge.

Defendant, James C. Becknell (Becknell), appeals the trial court's judgment entered in favor of plaintiffs, C.C. Collie (Collie) and Base 9 Condominiums, Inc. (Base 9). We affirm in part and reverse in part.

The pertinent facts, as found by the trial court on conflicting evidence, are as follows. In 1979, Becknell, Collie, and a third party formed a partnership to construct a condominium project in Breckenridge, Colorado. Becknell agreed to underwrite the project and Collie agreed to manage its construction. The partnership was later terminated and replaced by Base 9. Beck-

nell and Collie each held 50% of the Base 9 stock and they were officers and directors of the corporation.

Various loans were obtained by the parties to finance the project. The largest was acquired from a financing company (Western Plains). Also, both parties loaned personal funds to Base 9, becoming corporate creditors. However, soon after Base 9 began construction of 22 condominiums, the project ran into financial difficulty.

In 1980, Collie and Becknell discussed the need to obtain additional funds for completion of the project. Becknell refused to cooperate with Collie's efforts, on Base 9's behalf, to seek additional financing. As a result, Collie alone was forced to solicit new loans on behalf of Base 9. During 1980, Collie executed several promissory notes and a deed of trust to private investors, both individually and as president of Base 9. Becknell refused to co-sign these notes and the deed of trust in any capacity.

The project was completed by December 1980. Although eleven condominiums had been presold, the project remained in financial trouble. Western Plains commenced foreclosure proceedings in April 1981. Thereafter, Collie continued his efforts to refinance the project and sell the remaining units to generate revenues. Simultaneously, although Becknell knew of Collie's similar efforts, Becknell was negotiating for refinancing independent of Collie and Base 9.

In June 1981, the public trustee sold the eleven unsold Base 9 condominiums. Western Plains made the high bid of $1,083,307.25. This sum represented the total debt owed Western Plains by Base 9. The public trustee issued Western Plains a certificate of purchase, and the redemption and cure period commenced. During this time, Becknell sought legal advice regarding ways to obtain ownership of the condominiums free and clear of the outstanding liens. Becknell did not inform Collie of these inquiries, or of the advice given him.

On August 24, 1981, the redemption period expired. In late August, Collie learned that Becknell was negotiating with Western Plains to purchase from it the public trustee's certificate of purchase. Collie asked to enter into these negotiations, but, as it was negotiating with Becknell, Western Plains refused. Finally, in September 1981, Becknell, with the help of an outside financier, purchased from Western Plains the public trustee's certificate of purchase. The trial court concluded that the purchase of this certificate was tantamount to the purchase of the property, because the redemption period had expired and the issuance of the public trustee's deed would follow as a purely ministerial action.

Uncontradicted expert testimony at trial appraised the eleven condominiums at $1,991,000 when Becknell purchased the certificate of purchase. It is also undisputed that Becknell purchased the remaining eleven condominiums for $1,402,163.

After the fall of 1981, suits were brought by the holders of the promissory notes executed by Collie, individually and as president of Base 9. As a result, several judgments were entered against Collie and Base 9.

The trial court concluded that Becknell had breached two fiduciary duties. First, Becknell breached his fiduciary duty to Base 9 not to usurp corporate opportunities. Second, Becknell breached his fiduciary duty to Collie not to divert corporate property for his own benefit as a corporate creditor, in preference to Collie's rights as a Base 9 creditor and shareholder.

The trial court awarded plaintiffs $588,837 damages based upon the difference between the appraised value of the property and Becknell's purchase price for the public trustee's certificate of purchase. The trial court, without explanation, also awarded attorney fees to plaintiffs.

## I.

Defendant contends that the trial court erred in holding that Becknell breached his fiduciary duty to refrain from the usurpation of corporate opportunities. We disagree.

## A.

Defendant first argues that he did not have a duty as a director and shareholder

to obtain financing in order to redeem the foreclosed corporate property. We are not persuaded.

■ A corporate officer has a duty to refrain from purchasing property for himself if the corporation has an actual or expectant interest in the property or if such purchase hinders or defeats the corporation's legitimate business plans and purposes. *Carper v. Frost Oil Co.*, 72 Colo. 345, 211 P. 370 (1922). *See also Williams v. Stirling*, 40 Colo.App. 463, 583 P.2d 290 (1978).

However, in reliance on *Three G Corp. v. Daddis*, 714 P.2d 1333 (Colo.App.1986), defendant argues that his fiduciary duty not to usurp corporate opportunities did not include a specific duty to use or pledge personal funds to enable Base 9 to take advantage of business opportunity. *Three G Corp.* is distinguishable here.

In *Three G Corp.*, although the corporation had a right of first refusal to bid on leased property if offered for sale, purchase of the property was not within Three G's expectation. Instead, Three G had no intention to acquire the property.

In contrast here, Base 9, through Collie, had both the expectation and the intent to redeem the foreclosed property. Becknell's absolute refusal to comply with his agreement to underwrite the project was the only roadblock to the corporation's financial recovery.

Further, soon after the foreclosure proceedings were commenced, Becknell obtained legal advice regarding alternative "schemes" to purchase the corporate assets for himself free of liens. Becknell's attorneys advised in a memorandum that the following question "need be answered by Colorado counsel ... Are there any problems involving breaches of fiduciary duties owed to Base 9 by Becknell with either scheme, considering the fact that Becknell is a fifty percent (50%) shareholder, director and officer of Base 9?"

■ We hold that, although a corporate director or officer owes no general duty to use or pledge his personal funds to enable the corporation to take advantage of a business opportunity, he owes a duty to refrain from intentional activity aimed at allowing a corporation to become insolvent and thereby usurp a corporate opportunity for his own benefit. *See Whatley v. Wood*, 148 Colo. 349, 366 P.2d 570 (1961). Accordingly, Becknell's employment of his individual financial resources to acquire Base 9's assets for his own benefit defeated Base 9's legitimate business plans and purposes and constituted a breach of his fiduciary duty.

### B.

Defendant next argues that he did not usurp the opportunity of Base 9 to redeem the foreclosed property because Base 9 was not financially capable of redeeming the property. We disagree.

■ A corporation cannot be said to have an actual or expected interest in an asset or property when it does not have the financial capability to purchase it. *Bator v. Mines Development, Inc.*, 32 Colo.App. 320, 513 P.2d 220 (1973). *See also Three G Corp. v. Daddis, supra*. Again, the trial court found, on supporting evidence, that, but for Becknell's actions on his own behalf, Base 9 would have had the financial capability to redeem the foreclosed property.

■ Where, as here, the plaintiff has established a corporate interest and expectancy, the trial court's factual determination that there has been a breach of a director's or officer's duty to act for the corporation will not be disturbed on review. *See Three G Corp. v. Daddis, supra*. Accordingly, the trial court did not err in holding Becknell liable for his breach of fiduciary duty to refrain from the usurpation of corporate opportunities.

### II.

Defendant next asserts that the trial court erred in concluding that defendant breached his fiduciary duty to Collie not to divert corporate property for his own benefit, thereby creating a preferential transfer of assets. Again, we disagree.

Directors of an insolvent corporation are deemed to be trustees for it and its creditors. *Crowley v. Green*, 148 Colo. 142, 365 P.2d 230 (1961); *see Fishel v. Goddard*, 30 Colo. 147, 69 P. 607 (1902). As such, they owe a duty to the corporate creditors not to divest corporate property for their own benefit and thus defeat a corporate creditor's claim. *Rosebud Corp. v. Boggio*, 39 Colo.App. 84, 561 P.2d 367 (1977). If a director breaches this duty, corporate creditors may sue the director and hold him personally liable for his malfeasance. *Rosebud Corp. v. Boggio, supra.*

Under the circumstances here, when Becknell acquired Base 9's eleven remaining condominiums he preferentially transferred corporate assets. These actions caused a divestiture of Base 9's assets for his own benefit, and constituted a breach of his fiduciary duty to Collie, a Base 9 creditor. Hence, the trial court did not err in holding Becknell liable to Collie for this malfeasance.

## III.

Defendant next contends that the trial court erred in fashioning its award of damages. We agree in part.

If a corporate officer or director usurps a corporate opportunity, he will be deemed to hold the usurped property in constructive trust for the corporation. *See Carper v. Frost Oil Co., supra; Colorado & Utah Coal Co. v. Harris*, 97 Colo. 309, 49 P.2d 429 (1935); *Williams v. Stirling, supra.* Further, he will be required to account to the corporation for any profit made on the transaction. *See* "Appropriation of Corporate Opportunity," 5 Colo.Law Annot. 199 (1986).

Regarding preferential transfers, a creditor may recover the full value of the property conveyed to the director or officer up to the amount of the corporation's debt to the plaintiff. *John Boyle & Co. v. Colorado Patio & Awning Co.*, 654 P.2d 335 (Colo.App.1982). Additionally, the defendant has the burden of proving that the transferred assets were worth less

than the plaintiff's claim against the corporation; if the defendant fails to sustain this burden, the plaintiff may recover the full amount of the claim from defendant. *John Boyle & Co. v. Colorado Patio & Awning Co., supra.*

In its findings of fact and conclusions of law, the trial court calculated damages as the difference between the appraised market value of the eleven condominiums, and the amount Becknell paid for them. The court then correctly concluded that this $588,837 difference represented Base 9's damages for Becknell's usurpation of the corporate opportunity.

However, the court erroneously awarded the identical sum to Collie as his damages resulting from Becknell's preferential transfer. It is undisputed that the value of the preferentially transferred property, *i.e.,* the eleven condominiums, exceeds the amount of Collie's claim as a creditor of Base 9. Accordingly, Collie, as plaintiff-creditor for purposes of this claim, is entitled to damages for the preferential transfer determined by the full amount of his claim as creditor against Base 9. *See John Boyle & Co. v. Colorado Patio & Awning Co., supra.* Because the trial court applied an erroneous rule of damage and made no finding as to this amount, this cause must be remanded for its determination.

## IV.

Defendant also contends that, inasmuch as Collie failed to comply with C.R.C. P. 23.1, the trial court erred in allowing Collie to bring the derivative action for usurpation of corporate opportunity on behalf of Base 9. We disagree.

The requirements for commencing a derivative action pursuant to C.R.C.P. 23.1, are: (1) that the complaint be verified; (2) that the complaint allege that plaintiff was a member of the corporation at the time of the transaction of which he complains, or that his membership thereafter devolved upon him by operation of law; (3) that the complaint allege with particularity the efforts made, if any, by the complaining party to obtain the action he desires from the

directors or comparable authority; and (4) that the complaint state the reasons for the complaining party's failure to obtain the relief or for not making the effort. *See Caley Investments I v. Lowe Family Associates, Ltd.,* 754 P.2d 793 (Colo.App.1988).

Here, the complaint is verified. It is undisputed that Collie was a Base 9 shareholder at the time of the transaction of which he complains, and the complaint so alleges. Finally, the complaint alleges with particularity that, although there were three Base 9 directors, including Collie and Becknell, because Collie and Becknell were the only officers and shareholders, it would have been futile for Collie to make demands upon Becknell prior to commencing the action. Moreover, Collie repeatedly made efforts to persuade Becknell to assist in maintaining Base 9's solvency. The futility of such efforts demonstrates full compliance with the requirements of C.R.C.P. 23.1, and serves as the harbinger of this dispute.

### V.

Defendant finally contends that the trial court erred in awarding attorney fees to plaintiff. We agree.

An award of attorney fees may be justified in a derivative action. *See Jourdan v. Gilmore,* 638 S.W.2d 763 (Mo. App.1982), or pursuant to § 13–17–101, et seq., C.R.S. (1987 Repl.Vol. 6A). However, a trial court must conduct a hearing upon the issue of attorney fees. *See Zarlengo v. Farrer,* 683 P.2d 1208 (Colo.App.1984). Further, the trial court must make findings of fact and conclusions of law as to the basis for and amount of attorney fees awarded. *See Zarlengo v. Farrer, supra;* § 13–17–101(3) [1977] and § 13–17–102, C.R.S. (1987 Repl.Vol. 6A).

Here, the trial court neither conducted a hearing regarding attorney fees nor entered any findings of fact and conclusions of law concerning its award of attorney fees. Thus, the trial court erred in making this award.

The judgment as to Collie's damages and the award of attorney fees is reversed and the cause is remanded for further proceedings to determine the full amount of Collie's claim, as creditor, against Base 9, and as to attorney fees. In all other respects the judgment is affirmed.

CRISWELL and JONES, JJ., concur.