[No. 4033.]

## ABERNETHY ET AL. V. WRIGHT.

1. CONTRACTS—*Illegal.* No recovery can be had between the original parties upon a promissory note given as part of a scheme to defraud the creditors of the payee. (244.)

2. MAXIMS—*Potior est conditio defendentis.* The law will not lend its aid to either of the parties to an executory contract, the purpose of which was to defraud a third. (245.)

*Error to Boulder District Court.* HON HARRY P. GAMBLE, Judge.

Messrs. MILLER, BARND & WILLIAMS, for plaintiffs in error.

Messrs. S. H. THOMPSON, JR., THOMAS, BRYANT, NYE & MALBURN, for defendant in error.

BELL, J.

This action was commenced in the Boulder County District Court May 21st, 1910, upon a promissory note for $2,500, dated March 29th, 1909, payable one year after date, with interest at 8 per cent. per annum, to the order of Robert B. Wright, defendant in error, plaintiff below, hereinafter called plaintiff, and signed by Tom Abernethy, Jr., and Henry Peltier, plaintiffs in error, defendants below, hereinafter called defendants.

Amended separate answers were filed, denying the material allegations of the complaint, and for a second further defense, each of the defendants alleged that the consideration for the note was illegal; that plaintiff induced them to sign the note for the purpose of defrauding his creditors, and agreed to and did transfer to them a house and lot in Lafayette, Colo., for the purpose of avoiding the levy of executions thereon in actions then pending in the District and County Courts of Boulder County, wherein he was defendant and intervenor; that said transfer was made and the note executed so that plaintiff could show a consideration in law for said transfer, should it become necessary, or should said transfer be attacked by creditors; that said transfer was intended to be but temporary, and it was understood that the property was to be reconveyed, and the note cancelled, when the pending litigation was disposed of; that plaintiff agreed in writing with defendants that said note should never be collected from them or either of them, and that he should protect them against any damage or injury by reason of said transfer; that the note in question was without consideration and wholly void; and that defendants tendered in said answers a deed, executed and acknowledged, conveying whatever interest they may have had, of record or otherwise, in the property transferred to them.

Demurrers were filed to said amended separate answers, and overruled as to the first defenses, and sustained as to the second ones; defendants elected to stand by the second defenses as pleaded; the cause was tried to the court without a jury, and resulted in a judgment for the plaintiff in accordance with the prayer of the complaint.

The ruling of the trial court in sustaining the demurrers to said second defenses is among the errors assigned.

The courts are divided in allowing defendants *in pari delicto* to defend upon the ground of the illegality of their transactions when they are in undisturbed possession of the

property; but the better reasoned cases seem to support the admissibility of such defenses. In 14 Am. and Eng. Encyc. of Law, 2nd Ed., 277, it is said:

"In those courts which have decided this question in the affirmative, it has been said that to hold otherwise would produce the strange and unnecessary anomaly, that while the promises in a contract founded upon the illegal considerations of compounding a felony, gaming, usury, restraining trade, restraining marriage, and the like, cannot enforce it, he may do so if the consideration is that of a most gross and outrageous attempt to cheat and defraud creditors."

Bump on Fraudulent Conveyances, 4th Ed., page 457, sec. 444, holds that:

"The principles upon which a specific performance of an agreement to reconvey is refused apply also to an action at law upon such an agreement, *or upon a note given as the consideration for a fraudulent transfer.* There is a marked and settled distinction between executory and executed contracts of a fraudulent character. Whatever the parties to an action have executed for fraudulent purposes, the law refuses to compel the contractor to execute or to pay damages for not executing. In both cases it leaves the parties where it finds them." (Italics are mine.)

Among the very many cases cited to the proposition, both in Bump on Fraudulent Conveyances and in 14 Am. and Eng. Encyc., *supra,* is that of *Nellis v. Clark,* 4 Hill (N. Y.), 424, 20 Wend. 24, which is one of the earliest American discussions and dispositions of the question, and has since been consistently recognied and adhered to in a number of the states of the Union. There, as in the instant case, action was instituted upon a promissory note given as a part consideration for the transfer of a realty. At the trial defendant therein offered to prove, among other things, that the conveyance was fraudulent, and made for the purpose of avoiding the levy of an execution on the property conveyed, in an action for slander then pending against the

grantor. The evidence was objected to by the plaintiff in the action, who insisted that it was not competent for the defendant to allege his own fraud in exoneration of his liability. The objection was sustained, and upon review, Cowen, J., speaking for the Supreme Court of the State of New York, said:

"We are called upon to help Buttolph recover a sum of money which he openly declares is due to him as the wages of iniquity, the consideration of a fraudulent sale of his land in pursuance of a conspiracy between him and the defendant to defraud Otis and others; an offence indictable as such at common law under most circumstances, * * * and since made so by statute, without the ingredient of conspiracy.

"Why the law should single out the fraudulent debtor, and make him the special object of its favor, we have not been informed upon any authority, and I think we shall see that we have an abundance of authority which will warrant us in holding, that so long as the fraudulent contract is *unexecuted*, the principles cited will apply with all their force as well to this sort of unlawful dealing as to any other."

After comparing a number of cases, and discussing the effect of the statute 27 Elizabeth in the matter, he proceeds as follows:

"It seems to me, then, that we cannot mistake, in saying we are bound to look at the question before us precisely as if there were no statute on the subject. What conceivable difference, in principle, is there between the cases already cited and the one at bar? What difference between all that numerous class of contracts, such as bonds or notes given under arrangements to defraud third persons, creditors or others, which have been declared void at the common law, and the note before us? Marriage brokerage contracts are a familiar instance, because they tend to work a fraud as against a third party who is to be drawn into the

marriage. * * * Secret agreements for preference under deeds of composition * * * or in consideration of withdrawing opposition to the discharge of an insolvent, * * * or of puffing at an auction, * * * are void as being, in the first cases, fraudulent against creditors, and in the latter against bidders; and the party sued on such and like contracts may give the fraud in evidence to show that it is a case in which the law ought not to move. In *Holman v. Johnson* (Cowp. 343), Lord Mansfield said: 'The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man upon an immoral or an illegal act. If, from the plaintiff's stating otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally in fault, *potior est conditio defendentis.'* These remarks cover the whole ground on which Clark, the defendant, stands; as I attempted to show in the outset; neither he nor Buttolph have any positive remedy on their own account. But as the law finds them, so it will leave them. They derive that kind of negative assistance which arises from their cases being mutually such that the law will not tarnish its hands by rescuing them from the mire."

Wait on Fraudulent Conveyances and Creditors' Bills, 3rd Ed., page 720, sec. 396, quotes at length, with approval, from *Church v. Muir*, 33 N. J. Law, 319, to the effect that a note which is given for property transferred to the maker for the purpose of defrauding the creditors of the payee cannot be enforced in the hands of the payee against the maker; and many other authorities to the same effect, too numerous to mention, can be found from other states. An extended note to *Whitworth v. Thomas*, 3 Am. St. Rep., 725-745, most thoroughly discusses the subject, and in conclusion, pages 739-740, reads as follows:

"Whether such executory contracts are held to be valid or a nullity, the conclusion that they can be enforced is certainly not a logical one, or at least not one founded on legal or equitable principles, because, as in the particular instance of enforcing the collection of notes given in the payment of land or personal property so fraudulently transferred, the court thereby simply enables the fraudulent grantor or vendor to reap the fruits of his covinous transaction by collecting the proceeds of such sale, grant or transfer. The following cases, therefore, which hold that such executory contract cannot be enforced seem more consistent with all law and equity:" citing a long list of cases from Missouri, New York, Alabama, Ohio, and other states.

Nor is the question without authority from our own state. In *Branham v. Stallings*, 21 Colo. 211-216, 40 Pac. 396, 52 Am. St. 213, our Supreme Court, after citing, among others, *Nellis v. Clark, supra*, quotes, with approval, from *Norris v. Norris' Admr.*, 9 Dana's Ky. Reps. 317, 35 Am. Dec. 138, as follows:

" 'When the parties to an illegal or fraudulent contract are *in pari delicto*, neither a court of equity nor a court of law will aid either of them in enforcing the execution of that which may be executory, or in revoking or rescinding that which may have been executed. In such a case, the law will not be the instrument of its own subversion, and, to

every invocation of its assistance, replies, *'In pari delicto potior est conditio defendentis.'* "

This quotation is also made with approval in *McConnell v. Schultz,* 23 Colo. App. 194, 199, 128 Pac. 876, and in *Houston v. Walton,* 23 Colo. App. 282, 294, 129 Pac. 263, 267, King, J., speaking for the court, makes use of the following language:

" 'No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appear to arise *ex turpi causa,* or from the transgression of a positive law of this country, there the court says he has no right to be assisted.' Wharton's Legal Maxims, p. 81; *Martin v. Hodge,* 47 Ark. 378, 384." [1 S. W. 694, 58 Am. Rep. 763.]

We think the trial court erred in sustaining the demurrers to the second further defenses, and, therefore, the judgment is reversed and the case remanded for further proceedings.

*Reversed and remanded.*