In re PORTER McLEOD, INC., Debtor.

Harvey Sender, Trustee (as Trustee for Porter McLeod Inc.); PM Denver, Inc., PMNC, Inc., PMSC, Inc. and PMN, Inc., Plaintiffs,

v.

Bruce M. Porter; Joseph R. McLeod; William A. Johnson; Porter McLeod Holdings, Inc.; n/k/a PMCS, Inc.; Porter–McLeod National Retail, Inc.; Porter–McLeod Management, Inc.; Porter–McLeod Colorado, Inc.; Intermountain Companies, Inc.; Aurora National Bank, N.A.; Appel, Frey & Lucas, P.C., Garry R. Appel, Esq.; Johnson, Oldham & Angell, P.C.; Scott C. Brown, Esq.; and John Doe # 5; John Doe # 6; John Doe # 7; John Doe # 8; John Doe # 9; and John Doe # 10, Defendants.

No. Civ. A 97–B–1133.
Bankruptcy Nos. 96–24792 DEC, 96–24795 DEC, 96–24796 SBB, 96–24797 SBB.
Adversary No. 96–1202 DEC.

United States District Court, D. Colorado.

March 17, 1999.

Jon S. Nicholls, Nicholls & Associates, P.C., Denver, CO, Paul G. Quinn, Denver, CO, for plaintiffs.

Marc R. Brosseau, Kerr, Friedrich, Brosseau, & Bartlett, LLC, Denver, CO, Gilbert R. Egle, Elrod, Katz, Preeo, Look Moison & Silverman, P.C., Denver, CO, Glenn W. Merrick, Brega & Winters, P.C., Denver, CO, I. Thomas Bieging, Gabe McFarland, Jr., McKenna & Cuneo, LLP, Denver, CO, Thomas B. Quinn, White and Steele, Denver, CO, for defendants.

Harvey Sender, Denver, CO, trustee, Jeffrey Weinman, Denver, CO, trustee.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this bankruptcy case, defendants Appel, Frey, and Lucas, P.C. (Appel law firm) and Garry R. Appel, Esq. (Appel) (collectively, Appel defendants) joined by defendants Johnson, Olden and Angell (JOA law firm) and Scott C. Brown, Esq. (Brown), (collectively, Brown defendants) (all defendants known collectively, as legal defendants) move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Also pending are Fed. R.Civ.P. 56 summary judgment motions filed by defendant JOA law firm, Appel defendants, and defendant Brown, individually. After consideration of the motions, briefs, and counsels' arguments, I will grant the motions in part and deny them in part.

### I.

The following facts are undisputed. Defendants Bruce Porter (Porter) and Joseph McLeod (McLeod), equal owners of a construction company, incorporated the company in 1985 under the name Porter McLeod, Inc. (PMI). Second Amended Complaint, ¶ 4; Porter Depo., pp. 27–28.; Exh. A, pp. 6, 17, 20. In 1991, as a result of significant losses suffered in its Southern California operations, PMI determined that it needed to restructure. *Id.* at ¶ 19. Early in 1992, defendants Porter, McLeod, former defendant William A. Johnson and attorneys for PMI, including defendant Brown, began discussions relating to a reorganization plan which might help deal with the losses. *Id.* at ¶ 21. On March 5, 1992, Porter and McLeod created three new corporations as part of the reorganization concept recommended by the attorneys: 1) Porter–McLeod Holdings, Inc. (PM Holdings), n/k/a PMCS; 2) Porter–McLeod Colorado, Inc. (PM Colorado); and 3) Porter–McLeod National Retail, Inc. (PM National). *Id.* at ¶¶ 11, 22. On March 5, 1992, PMI became a wholly-owned subsidiary of PM Holdings which served as a holding company for 100% of PMI's stock. *Id.* at ¶¶ 4, 12. On March 10, 1992, following the formation of PM Holdings and its subsidiaries, Porter, McLeod, and their attorneys retained the Appel defendants to review the

reorganization concepts and the associated bankruptcy implications. *Id.* at ¶ 23. During the period from March 10th until March 19, 1992, meetings and discussions occurred among Porter, Johnson, Brown, and Appel. At Appel's suggestion, on March 19, 1992, Porter and McLeod created five new PMI subsidiaries: 1) PM Denver, Inc., 2) PMNC, Inc., 3) PMSC, Inc. 4) PMN, Inc.; and 5) Porter–McLeod Management, Inc. *Id.* at ¶¶ 24–25. Between March 19th and May 3, 1992, a series of transfers occurred among PMI and its subsidiaries and the three subsidiaries of PM Holdings. *Id.* at ¶¶ 26–32. As a result of the transactions, PMI and its subsidiaries were left with little, if any, assets. *Id.* at ¶ 35.

Unpaid trade creditors filed an involuntary petition for relief under Chapter 7 against PMI in the United States Bankruptcy Court for the District of Colorado on November 30, 1994. On January 9, 1995, the Bankruptcy Court appointed plaintiff Harvey Sender (Sender or Trustee) trustee for PMI's bankruptcy estate. Sender then assumed control of PMI. On March 5, 1996, pursuant to court order authorizing the use of the stock of the four subsidiaries owned by PMI, Sender held shareholder meetings of PMI's four subsidiaries, PMN, Inc., PMC, Inc., PMSC, Inc., and PM Denver (corporate plaintiffs). During the meetings, Sender, as sole shareholder, removed prior management and elected himself president of each of the corporate plaintiffs. Sender then held directors' meetings during which he was elected as the sole director of each subsidiary corporation. On November 22, 1996, Sender filed Chapter 7 petitions in bankruptcy on behalf of PMI's four new subsidiaries and Jeffrey Weinman (Weinman) was appointed trustee for these four corporations. Sender also filed an adversary proceeding complaint in the Bankruptcy Court on March 29, 1996. On December 2, 1996, the Bankruptcy Court ordered the bankruptcy cases of PMI and the four subsidiary corporations be jointly administered. On June 20, 1997, pursuant to Sender's motion, the Bankruptcy Court approved a restricted assignment between Sender and Weinman, Def. MSJ Brief, Ex. A, whereby Weinman, as Trustee for the four subsidiary corporations, assigned for purposes of collec-tion his right in and to any and all causes of actions or claims of the four corporations. *Id.* On May 6, 1996, Sender filed a First Amended Complaint followed by a Second Amended Complaint on March 7, 1997. The bankruptcy action was transferred to this court on May 9, 1997 after several defendants requested trial by jury.

## II.

### Pending claims and motions

In the second amended complaint, the Trustee brings claims one through ten for fraudulent transfer, turnover, subordination of claims, breach of contract, breach of fiduciary duty, constructive trust, civil conspiracy and conversion and civil theft against various corporate defendants, Mr. Porter, Mr. McLeod, and Aurora National Bank, N.A. There are no pending dispositive motions concerning claims one through ten.

In claim eleven, the Trustee, in his own right and as Trustee Weinman's assignee, alleges that the legal defendants committed professional malpractice. In the same capacity, in claim twelve, the Trustee alleges that the legal defendants aided and abetted breach of fiduciary duty. Pending are: 1) Fed.R.Civ.P. 12(c) motions for judgment on the pleadings; and 2) Fed.R.Civ.P. 56 summary judgment motions filed by the legal defendants.

## III.

### Motions for judgment on the pleadings

#### A. *Claims eleven and twelve*

Legal defendants seek judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) as to claims eleven and twelve for professional malpractice and aiding and abetting breach of fiduciary duty on the grounds that the Trustee does not have standing to bring these claims. I disagree.

#### 1. *Fed.R.Civ.P. 12(c) standard*

The standards applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6) also apply to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings. *O. Bishop v. Federal*

*Intermediate Credit Bank of Wichita,* 908 F.2d 658 (10th Cir.1990); *see* Wright & Miller, Federal Practice and Procedure: Civil 2d § 1368. A district court may grant judgment on the pleadings if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If plaintiffs have pleaded facts that would support a legally cognizable claim for relief, a motion for judgment on the pleadings should be denied. *See id.* In reviewing the sufficiency of the complaint, all well-pled facts, as opposed to conclusory allegations, must be taken as true. *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384 (10th Cir.1997). All reasonable inferences must be liberally construed in the plaintiffs' favor. *Id.*

### 2. *Judicial estoppel*

■ The Trustee contends, as a initial matter, that the legal defendants are judicially estopped from raising standing based on the Appel defendants' contrary position as to the Trustee's authority to bring claims against third-parties taken in a pleading titled "Suggestion of Bankruptcy" filed in a proceeding against PMI and PM National in the United States District Court for the Central Division in Salt Lake City, Utah. Resp. Ex. B.

Contrary to the Trustee's assertions, "[t]he Tenth Circuit has rejected the doctrine of judicial estoppel." *United States v. 49.01 Acres of Land,* 802 F.2d 387, 390 (10th Cir. 1986); *see also Smith v. Midland Brake, Inc., a Division of Echlin, Inc.,* 138 F.3d 1304, 1312 (10th Cir.1998) ("We wish to make clear that under the law of this circuit, [a party] is not judicially estopped from ... making claims that are inconsistent with ... prior representations...."). Thus, I will consider defendants' standing arguments.

### 3. *Standing*

The United States Constitution, Article III, § 2, cl. 1, limits the jurisdiction of federal courts to cases and controversies. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,*

454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *United States v. Colorado Supreme Court,* 87 F.3d 1161, 1164 (10th Cir. 1996). From this limitation, springs the doctrine of standing which addresses whether a litigant is entitled to have the court decide the merits of a dispute or particular issue. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) *quoting Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "The party asserting [standing] bears the burden 'to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *Warth,* 422 U.S. at 518, 95 S.Ct. 2197.

#### a. *Source of Trustee's standing*

Citing 11 USC § 544(a), the Trustee filed claim eleven for professional malpractice and claim twelve for aiding and abetting breach of fiduciary against the legal defendants. These defendants contend that the "Trustee's standing is derived from the debtor," Mtn. for Judgment on the Pleadings Brief, *passim,* while the Trustee contends that his standing flows from the creditors. Resp. p. 2. The determination of the source of the Trustee's standing is critical to the analysis of the legal defendants' Rule 12(c) motion.

Under § 541(a)(1), the bankruptcy estate includes, except as otherwise provided, "all legal or equitable interests of the debtor in property as of the commencement of the case," including causes of action belonging to the debtor at the commencement of the bankruptcy case. *See Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986) (debtor corporation's estate includes any right of action debtor corporation has against corporate officers or directors); *In re M & L Business Machine Co., Inc.,* 136 B.R. 271, 275 (Bankr.D.Colo.1992); H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, reprinted in 1978 U.S.C.C.A.N. 5963, 6323 (under § 541, debtor estate "will include choses in action and claims by the debtor against others"). It is from this "central core of estate property" that the debtors' creditors will be paid. 5 Collier on Bankruptcy, ¶ 541.01, 541–6.1 (15th Ed. Rev.).

■ To assert a cause of action included in the bankruptcy estate, the Trustee must draw his authority from some provision within the Bankruptcy Code. *Sender v. Simon*, 84 F.3d 1299, 1303–04 (10th Cir.1996). Causes of action commenced by a trustee on behalf of a debtor estate fall into two broad categories: (1) actions brought pursuant to § 541(a) by the trustee as successor to the debtor's interests in property of the estate pursuant to § 541(a); and (2) § 544(a) actions brought under one of the trustee's avoidance powers to set aside transfers. *Id.* at 1304; 2 Collier on Bankruptcy ¶ 323.02[4], at 323–10.

■ When a trustee brings an action pursuant to § 541(a) as successor to the debtor's interests in property, his standing stems from his debtor's status *qua* debtor. However, in Sender's complaint, he relies on § 544(a) to bring these tort claims against the legal defendants. Section 544(a) gives the trustee power, as of the commencement of the bankruptcy case, to avoid transfers and obligations of the debtor to the same extent as certain hypothetical ideal creditors. *See* 11 U.S.C. § 544(a) (giving the trustee the same avoidance powers as: 1) a judicial lien creditor; 2) a creditor holding an execution returned unsatisfied; or 3) a bona fide purchaser of real property, whether or not such creditors or purchaser exist). Thus, under § 544(a), the Trustee's standing is as a creditor.

■ Where, as here, more than one section of the Bankruptcy Code provides a trustee with authority to bring an action, the trustee may choose which provision to employ. *See In re Verco Industries*, 704 F.2d 1134, 1137 (9th Cir.1983) (when trustee has two rights to title in the same property, choice between remedies warranted); *In re Seward Dredging Co.*, 242 F. 225, 228 (2nd Cir.) *cert. denied*, 245 U.S. 651, 38 S.Ct. 11, 62 L.Ed. 531 (1917) (trustee has right to chose position of attaching creditor as being most favorable to his contentions); *In re Leonard*, 197 B.R. 78, 80 (Bankr.N.D.Ill. 1996) ("Section 544(b) was clearly designated as the Trustee's tool of choice."); *Johnson v. National Sugar Mfg. Co.*, 88 Colo. 404, 411, 297 P. 995, 998 (1931); *J.H. Hincke Printing Co. v. Bailey*, 83 Colo. 242, 248, 263 P. 719, 721 (1928). Consequently, the trustee in this case has the right to select § 544(a) "creditor" status as a basis for his standing to pursue his tort claims against the legal defendants.

■ In describing a trustee's "creditor" status under § 544(a)(1), the Tenth Circuit has stated:

from the reservoir of equitable powers granted to the trustee to maximize the bankruptcy estate, Congress has fashioned a legal fiction. Not only is the trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but also the fiction permits the trustee to assume the guise of a creditor with a judgment against the debtor. Under that guise, the trustee may invoke [the] state law remedies provided to judgment lien creditors to satisfy judgments against the debtor.

*Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir.1990). Further, § 544(a) provides the trustee with the authority to avoid transfers of the debtor, including, as alleged in this case, transfers of PMI's assets made to defendant corporations. However, the extent of the trustee's § 544 rights is measured by the substantive law of the jurisdiction governing the property in question. *Seymour v. Wildgen*, 137 F.2d 160 (10th Cir.1943). Thus, a trustee's choice of status under which to pursue certain claims may turn on the availability of particular legal defenses.

Defendants cite *In re M & L*, 136 B.R. at 277 for the proposition that the Trustee's standing should be as a debtor rather than a creditor. In *M & L* the issue presented was whether plaintiffs, individual unsecured creditors of M & L, should be precluded from pursuing their own claims against individuals and entities other than M & L. The trustee argued that the claims were property of the bankruptcy estate and, as such, she possessed the exclusive right to pursue them. However, here it is the trustee rather than unsecured creditors bringing claims eleven and twelve. The parties do not dispute that the tort claims are property of the bankruptcy estate. Thus, *M & L* and the cases upon

which the *M & L* court relied, are inapplicable.

Having chosen "creditor" status, the issue then is whether a creditor has standing to sue a debtor corporation's attorneys for professional malpractice and/or aiding and abetting breach of fiduciary duty.

 Under Colorado law, judgment lien creditors have the right to pursue all claims available to a debtor corporation before bankruptcy was declared. *Ficor, Inc. v. McHugh,* 639 P.2d 385, 393–94 (1982); *J.H. Hincke,* 263 P. at 722. This right comports with the reasoning that a trustee has standing to pursue not only claims of the debtor corporation but those obtained derivatively from creditors. *Wieboldt Stores, Inc. v. Schottenstein,* 131 B.R. 655, 668 (N.D.Ill. 1991). As the *Wieboldt* court explained:

> when a trustee brings a claim such as breach of fiduciary duty, he or she brings the claim 'in the name of the corporation for the benefit of all persons entitled to participate in the recovery.' Accordingly, the trustee is acting in his capacity *as a creditor* under § 544(a) to bring a 'creditors bill' to reach choses in action that belong to the debtor.

*Id.* at 668 (emphasis added). Hence, under Colorado law and cases applying § 544(a), the Trustee has standing as a creditor, to assert claims eleven and twelve against the legal defendants. I will deny legal defendants' motion for judgment on the pleadings based on standing.

### B. *Duplicative nature of claims eleven and twelve*

Legal defendants contend that claim twelve for aiding and abetting breach of fiduciary duty is duplicative of and, therefore, subsumed into claim eleven for professional malpractice because both claims are based on the same conduct. I disagree.

 In Colorado, a claim will lie against attorneys for professional malpractice. *Temple Hoyne Buell Foundation v. Holland & Hart,* 851 P.2d 192 (Colo.App. 1992) (*cert. denied* 1993); *Myers v. Beem,* 712 P.2d 1092 (Colo.App.1985) (cert. denied 1986). The essential elements of professional

malpractice are damages incurred by plaintiff caused by the negligence of defendant attorney. *See* CJI–Civ.3d 9:1; 15:22. Also under Colorado law, there exists a cause of action for breach of fiduciary duty, *see, e.g., Rupert v. Clayton Brokerage Co. of St. Louis, Inc.,* 737 P.2d 1106 (Colo.1987), which lies in tort. *Rubenstein v. South Denver Nat'l Bank,* 762 P.2d 755 (Colo.App.1988). A claim for aiding or abetting a tortious act may be maintained if: 1) the party whom the defendant aids or assists performs a wrongful act that causes an injury; 2) the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and 3) the defendant knowingly and substantially assists the principal violation. *Holmes v. Young,* 885 P.2d 305, 308 (Colo.App.1994).

 Here, the allegations in support of claims eleven and twelve reveal the error in the legal defendants' assertion that claim twelve is subsumed into claim eleven. Claim eleven for professional malpractice alleges that the legal defendants were negligent by breaching *their* dut[ies] to plaintiffs. Second Amended Complaint ¶ 104. Claim twelve avers that the legal defendants "aided and abetted the breaches of fiduciary duties *by the officers and directors* of the debtor corporations." *Id.* at ¶ 107. The legal defendants' duties to the debtor corporations, *see* claim eleven, are distinct and different from the duties of the officers and directors of the debtor corporations to the debtor corporations, its four subsidiaries, and their creditors. *See* Second Amended Complaint, ¶ 79. Hence, claims eleven and twelve are separate and discrete claims, neither of which is duplicative of, or can be subsumed into, the other. Accordingly, I will deny defendants' motion for judgment on the pleadings as to claim twelve.

### C. *In pari delicto doctrine*

Based on PMI's alleged participation through its directors in the transfer of PMI's assets, the legal defendants seek to avoid liability on claims eleven and twelve by invoking the doctrine of *in pari delicto.* In opposition, the Trustee reasons that when he

acts in his § 544(a) "creditor" status, this doctrine is inapplicable. I agree.

■■■ "*In pari delicto*" is defined as "in equal fault" or "equally culpable or criminal." *See* Black's Law Dictionary 711 (rev. 5th ed.1979). The doctrine is based on the principle that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them. *Bushner v. Bushner*, 134 Colo. 509, 307 P.2d 204 (1957); *Sender v. Kidder Peabody & Co., Inc.*, 952 P.2d 779, 782 (Colo.App.1997); *Abernethy v. Wright*, 27 Colo.App. 239, 148 P. 277 (1915).

■■■ In bankruptcy, the doctrine applies only to the trustee in his "debtor" status, not as "creditor." *See In re Mediators, Inc.*, 105 F.3d 822 (2d Cir.1997) (when debtor, through its sole shareholder, participated in transactions that form basis of aiding and abetting breach of fiduciary duty claim against third parties, creditors' committee, standing in position analogous to that of bankruptcy trustee, did not have standing to assert such claim on debtor's behalf); *Sender v. Simon*, 84 F.3d 1299, 1307 (10th Cir.1996) (when trustee stands in shoes of debtor, pursuant to § 541(a)(1), trustee subject to same defenses as debtor; therefore, *in pari delicto* doctrine applicable against trustee); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir.1995) (because debtor collaborated with its accounting firm in scheme to defraud investors, trustee for debtor lacked standing to assert malpractice claims against firm); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir.1991) (bankruptcy trustee lacked standing to bring claim against third party for defrauding corporation with cooperation of management; such claim belongs to creditors, not guilty corporation); *Sender v. Kidder Peabody & Co., Inc.*, 952 P.2d 779, 782 (Colo.App.1997); *Grove v. Sutliffe*, 916 S.W.2d 825 (Mo.App.1995) (when corporate officer's fraud intended to and did benefit corporation to detriment of outsiders, fraud imputed to corporation and is absolute defense to corporation's action against its accounting firm for negligent failure to discover fraud). This rule is consistent with the fundamental purpose of the Bankruptcy Code to marshal the bankruptcy estate assets so that there is "equality of distribution of assets among similarly situated creditors...." 5 Collier on Bankruptcy § 541.01, 541.6.1 (15th ed. Rev.). In this case, the trustee has selected creditor status under § 544. *See* § II(A)(3), *supra*. Consequently, I will deny legal defendants' motion for judgment on the pleadings based on application of the *in pari delicto* doctrine.

## IV.

### Motions for summary judgment

The following Fed.R.Civ.P. 56 summary judgment motions are pending: 1) Appel defendants' motion on the Trustee's claims; 2) defendant JOA law firm's motion on the Trustee's claims; 3) individual defendant Scott Brown's motion on the Trustee's claims.; and 4) Appel and JOA defendants' motion on the claims brought by Trustee Sender as Trustee Weinman's assignee concerning the four corporate plaintiffs, PM Denver, Inc., PMNC, Inc., PMSC, Inc., and PMN, Inc.

### A. *Fed.R.Civ.P. 56 standard*

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Mares v.*

*ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir.1980); Fed. R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. 2505; *Mares*, 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White* at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505.

### B. *Appel defendants' summary judgment motion on claims eleven and twelve—statute of limitations*

Consistent with their Rule 12(c) motion, Appel defendants contend that claims eleven and twelve are brought pursuant to the Trustee's "debtor" status. They argue that pursuant to this "debtor" status, Sender's claims are barred by Colorado's two-year statute of limitations applicable to tort actions. Having determined that the Trustee may assert these claims as a § 544(a) creditor, *see* section II(B)(2) and (3), I rely on authority addressing the relationship between § 544(a) actions and the pertinent statutes of limitations.

To determine the date after which the applicable statutes of limitations barred the filing of claims, I examine the interplay between non-bankruptcy law and pertinent Bankruptcy Code provisions.

#### 1. *Claim eleven for professional malpractice*

With regard to claim eleven for professional malpractice, § 13–80–102, C.R.S. provides:

(1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within *two years* after the cause of action accrues, and not thereafter: (a) tort actions, including but not limited to actions for negligence . . . .

Section 13–80–102(1)(a), C.R.S. (emphasis added). Next, I consider 11 USC § 108, also relied on by the Trustee to establish the date by which claim eleven was required to be filed.

Section 108 provides:

(a) If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the *later* of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

Title 11 U.S.C. § 108(a) (emphasis added).

If the November 30, 1994 filing date of the involuntary petition is the date of accrual, pursuant to § 13–80–102(1)(a)(1), the Trustee was required to file the professional malpractice complaint by November 30, 1996. The order for relief was filed on January 9, 1995. Under the terms of § 108(a)(2), therefore, the Trustee was required to file claim eleven by January 9, 1997. The pertinent date for evaluating the applicable statutes of limitations is January 9, 1997, the later of the two dates. *See* § 108(a).

The original complaint, filed on March 29, 1996, well within the January 9, 1997 expiration date, contained a claim for professional malpractice against "John Does 1–10," but did not name Garry Appel or the Appel law firm as defendants. Complaint, ¶¶ 88–90. However, the Complaint contained the following statement:

16. John Does 1–10 are professional advisors, attorneys and accountants, whose identities are partially known, (e.g., Scott Brown, Esq. and Garry Appel, Esq., and their respective law firms), and partially unknown, each of whom had duties to Plaintiffs which may have been breached and which may have caused damages. The particulars of the identities, the extent of the breaches and the damage caused are presently unknown but should be developed through discovery.

*Id.* at ¶ 16. On May 6, 1996, Sender filed a first amended complaint containing the preceding statement, in which he once again asserted claim eleven for professional malpractice against "John Does 1–10." Thereafter, Sender filed a motion for leave to file second amended complaint, in which he requested the Court to approve the filing *nunc pro tunc* to November 27, 1996. The Bankruptcy Court granted the motion to file the second amended complaint, but refused to grant it *nunc pro tunc*. Sender ultimately filed the second amended complaint on March 7, 1997, in which, for the first time, he named the Appel defendants in place of John Does #1 and #2. The second amended complaint also contained a new claim for aiding and abetting breach of fiduciary duty.

a. *Fed.R.Civ.P. 15—relation back*

■ Seeking to avoid summary judgment, Sender argues that pursuant to Fed. R.Civ.P. 15, the second amended complaint relates back to the March 29, 1996 filing and, therefore, claims eleven and twelve are not barred by the statute of limitations.

Fed.R.Civ.P. 15 provides, in pertinent part:

(c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when . . .

(2) the claim or defense asserted in the amended pleading arose out of the con-

duct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15.

Sender does not dispute that the second amended complaint was filed outside the applicable state statute of limitations period but argues that it "relates back" to the March 29, 1996 filing date of the original complaint. "[S]uch amendment can relate back to the date the [original] complaint was filed only if the provisions of Rule 15 are met." *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1389 (10th Cir.1984). Therefore, the second amended complaint relates back to the original complaint only if:

1) the professional malpractice claim asserted in the second amended complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original complaint;

2) the Appel defendants received such notice of the institution of the action that they would not be prejudiced in maintaining a defense on the merits; and

3) the Appel defendants knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against them.

It is undisputed that second amended complaint claim eleven arose out of the conduct set forth in the original complaint. However, the Appel defendants contend they did not receive notice of any claim against them until the second amended complaint was filed and

properly served, by which time the statute of limitations had run. Their position ignores the fact that they continued to represent the successor corporations when the original complaint was served. Moreover, the first amended complaint, also naming Garry Appel in the factual allegations, was mailed to Mr. Appel on May 6, 1996. Resp.Ex. C. Under these circumstances, there is no genuine dispute that the Appel defendants were on notice, pursuant to Rule 15, of claim eleven before January 7, 1997.

In support of their motion for summary judgment on claim eleven, the Appel defendants rely most strongly on their third argument that by naming them in the second amended complaint, in place of John Does No. 1 and 2, the Trustee was substituting them as parties rather than correcting a mistake. Therefore, according to the Appel defendants, the second amended complaint cannot, as a matter of law, "relate back."

The Tenth Circuit, as do other circuits, distinguishes between misnomers and substitution of parties. *Watson v. Unipress, Inc.,* 733 F.2d 1386, 1389 (10th Cir.1984) (replacing John Doe with named defendant amounted to adding a new party rather than correcting a misnomer); *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 468 (2d Cir.1995), *modified,* 74 F.3d 1366 (2d Cir.1996). Moreover, "the plain language of [Fed.R.Civ.P. 15(c)(3) ] permits relation back of claims against only mistakenly identified parties (under certain circumstances.)" *Henry v. FDIC,* 168 F.R.D. 55, 59 (D.Kan.1996).

An amendment replacing a "John Doe" defendant is a substitution of a party, not a correction of a misnomer or mistake. *Barrow,* 66 F.3d at 468 (2nd Cir.1995); *Watson,* 733 F.2d at 1389. In that sense, it is like the filing of a new lawsuit, or, as the Tenth Circuit has put it, substitution of a party creates a new cause of action. *Graves v. General Ins. Corp.,* 412 F.2d 583, 585 (10th Cir.1969).

Where, as here, the Trustee named Appel defendants in the second amended complaint claim eleven in place of the John Doe defendants named in the original complaint and the first amended complaint, he substituted a party rather than corrected a mistake. Therefore, the second amended complaint created a new cause of action which does not relate back to the original complaint. Therefore, in theory, Sender's claim eleven against the Appel defendants is barred as untimely.

b. *Equitable tolling*

In response, the Trustee relies on the doctrine of equitable tolling to assert that these claims did not accrue until he, in the role of creditor, discovered the alleged negligence of Appel defendants.

 The doctrine of equitable tolling prevents the application of the two-year limitation when the trustee is unable to assert a cause of action due to fraud or concealment by the debtor, or when circumstances beyond the trustee's control made it impossible to file a claim on time. *See Jobin v. Boryla (In re M & L Business Machine Co., Inc.),* 75 F.3d 586, 590–91 (10th Cir.1996). In Colorado, the statute of limitations for a legal malpractice action begins running at the time the attorney's alleged negligence is discovered or through use of reasonable diligence should have been discovered. *See Broker House Int'l, Ltd. v. Bendelow,* 952 P.2d 860, 863 (Colo.App.1998). "The focus is on a plaintiff's knowledge of facts that would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of an attorney." *Id. citing Morris v. Geer,* 720 P.2d 994 (Colo.App.1986); *see* § 13–80–108(1), C.R.S. Typically, the determination of the date upon which the statute of limitations begins running is a question of fact. *See Morris, citing Palisades Nat'l Bk. v. Williams,* 816 P.2d 961 (Colo.App.1991).

 Here, there is evidence that the Appel defendants assisted PMI in creating the eight new corporations which were used to effectuate the alleged fraudulent transfers, the effects of which were concealed until after this action was filed. Second Amended Complaint, ¶ 102. In his role as creditor, the Trustee could not have known of potential claims against PMI's attorneys until some time after he was appointed in January 1995. In his affidavit, the trustee states that he "first became aware of potential claims

against the Debtors' attorney's in late September 1995...." Ex. A. Sender Affidavit. Under these circumstances, the date that the trustee knew or should have known of the potential claims against Appel defendants is a disputed question of material fact. Therefore, I deny Appel defendants' motion on claim eleven. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

### 2. *claim twelve—aiding and abetting breach of fiduciary duty*

#### a. *Duplicativity*

As to claim twelve for aiding and abetting breach of fiduciary duty, Appel defendants contend that it is duplicative of claim eleven. I have determined that these claims are not duplicative. *See* section III(B), *supra.* Therefore, I will deny Appel defendants' motion for summary judgment on claim twelve on the basis that it is duplicative.

#### b. *Statute of limitations*

■ Appel defendants seek summary judgment on claim twelve for aiding and abetting breach of fiduciary duty as barred by a two year statute of limitations. I deny the motion.

Section 13–80–101, C.R.S. provides:

(1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within *three years* after the cause of action accrues, and not thereafter: ... (f) *All actions for* breach of trust or *breach of fiduciary duty* ....

§ 13–80–101(1)(f), C.R.S. (emphasis added).

Having determined that claim twelve is not duplicative of claim eleven for legal malpractice, I conclude that the statute of limitations applicable to claim twelve is three years. Thus, this claim is barred if it was filed more than three years after it accrued. As stated in § IV(B)(1)(b), *supra,* the date that this action accrued is a disputed question of fact. Therefore, I deny Appel defendants' motion on this basis as well. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

### C. *JOA's motion for summary judgment on claims eleven and twelve-statute of repose, § 38–30–171, C.R.S.*

■ It is undisputed that on May 1, 1992, defendant Scott Brown retired from the practice of law. Soon after, on August 7, 1992, the JOA law firm was legally dissolved. JOA MSJ, Ex. B.

The JOA law firm seeks summary judgment on claims eleven and twelve as barred by the Colorado corporate statute of repose contained in § 38–30–171, C.R.S. In response, the Trustee argues that § 38–30–171 is inapplicable because Title 38, Article 30 applies to interests in real property, is not applicable to corporations generally, and is not part of the Colorado Corporation Code or the Colorado Business Corporation Act. I disagree.

Section 38–30–171, C.R.S. provides:

(1) This section shall apply to corporations for profit that were both formed under the laws of this state and dissolved before July 1, 1994,

(2) The dissolution of a corporation shall not eliminate or impair any remedy available to or against the corporation or its directors, officers, or shareholders for any right or claim existing or any liability incurred prior to such dissolution if an action or other proceeding is commenced thereon within two years after the date of the dissolution. The foregoing limitation shall not apply to any action affecting title to real estate....

Section 38–30–171, C.R.S., (eff. June 1, 1996). The Colorado Corporation Code, including § 7–8–122 which provided a two-year period of repose, was repealed in 1993 and was replaced by the Colorado Business Corporation Act, effective July 1, 1994, which contains no provision addressing a period of repose.

The Trustee argues that "if the General Assembly had intended to provide a two-year period of repose ..., then surely it would have included [it] in § 7–114–105(2) which states instead, that '[d]issolution of a corporation does not ... (e) prevent commencement of a proceeding by or against the corporation in its corporate name.'" Resp. p. 2.

However, the Trustee fails to provide authority, and I am unaware of any, for the proposition that the mere location of a statutory provision within a series of statutes renders it inapplicable to other pertinent provisions. Indeed, under the doctrine of *in para materia,* the opposite is true.

 The doctrine of *in pari materia* requires statutes relating to the same subject matter to be construed together to fully effectuate the legislative intent. *Walgreen Co. v. Charnes,* 819 P.2d 1039, 1043 (Colo.1991). Statutes *in pari materia* should be construed together and harmonized if possible. *City of Lakewood v. Mavromatis,* 817 P.2d 90, 96 (Colo.1991). Under this doctrine, I should attempt to reconcile such statutes so as to give effect to all the provisions of each statute. *M.S. v. People,* 812 P.2d 632, 637 (Colo. 1991). If construction *in pari materia* leads to irreconcilable inconsistency, the later and more specific statute usually controls the earlier and more general. *Hellon & Associates, Inc. v. Phoenix Resort Corp.,* 958 F.2d 295, 297 (9th Cir.1992). Regardless of the priority of enactment, a specific statute should not be deemed to be controlled or nullified by a general statute absent definite contrary intention. *Franklin v. United States,* 992 F.2d 1492, 1502 (10th Cir.1993). It is axiomatic that "courts must presume that the legislature says in the statute what it means and means in the statute what is says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Also, I presume that a legislature is aware of other existing laws when it passes legislation. *See Miles v. Apex Marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).

Section 38–30–171 states unambiguously that it "appl[ies] to corporations for profit that were both formed under the laws of this state and dissolved before July 1, 1994." *Id.* It is undisputed that JOA was a for-profit Colorado corporation dissolved on August 7, 1992. Therefore, by its plain language, § 38–30–171 applies. Also, the statute mandates that *any* action for "*any* remedy ... for *any* right or claim or *any* liability incurred prior to such dissolution" must be brought, if ever, within two years from the date of dissolution. *Id.* at ¶¶ 1 and 2 (emphasis added). This broad, unambiguous statutory language clearly applies to the professional malpractice and aiding and abetting claims in the second amended complaint. It is not unreasonable to assume that the repose provision is found in Title 38 because it specifically provides that its limitations on action against dissolved corporations *does not* apply to real estate. Also, § 38–30–171 became effective after the Colorado Business Corporation Act and is more specific concerning a repose period than the Act.

I conclude, therefore, that when read *in pari materia,* and given their plain and ordinary meaning, the pertinent statutes unambiguously provide that although dissolved corporations may be sued in their corporate name, any action must be commenced within two years after the date of dissolution. Therefore, I grant JOA's motion for summary judgment on claims eleven and twelve.

D. *Defendant Brown's individual motion for summary judgment on claims eleven and twelve*

Mr. Brown moves individually for summary judgment on claims eleven and twelve on the grounds that the applicable statute of limitations bars these claims. I disagree.

The undisputed facts set out in previous sections of this Order are incorporated into this analysis. The following additional facts are also undisputed. In January 1992, PMI, through its principals, retained Brown to assist in its corporate restructuring. Brown worked on the project until May, 1, 1992, when he left the practice of law and his relationship with PMI and its subsidiaries was terminated.

Brown argues that on these undisputed facts, PMI knew or should have known of Brown's alleged professional malpractice no later than May 1, 1994. Thus, pursuant to the pertinent statute of limitations, any claims based on this pre-petition conduct are barred if filed after May 1994. *See* § 13–18–102(a), C.R.S.

Here, the bankruptcy petition was filed · against PMI on November 30, 1994, the Bankruptcy Court entered its order for relief

on January 9, 1995, and the original complaint was filed on March 29, 1996. According to Brown, because these events occurred well after May 1994, the trustee's claims against him are barred. I disagree. For the reasons stated in § IV(B)(1)(b), *supra*, the date this action accrued is a disputed question of material fact. Therefore, summary judgment is inappropriate. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505.

### E. *Appel defendants' and JOA defendants' summary judgment motion on claim eleven and claim twelve brought by the Trustee as assignee of Trustee Weinman*

■ Appel defendants and JOA defendants seek summary judgment on claims eleven and twelve brought against them by Trustee Sender as assignee for Trustee Weinman, Trustee for the four corporate plaintiffs, on the basis that legal malpractice claims are non-assignable. In addition, these defendants seek summary judgment on claim twelve for aiding and abetting breach of fiduciary duty on the grounds that the claim is duplicative of claim eleven. Having granted JOA's summary judgment motion on claims eleven and twelve, *see* section IV(C), *supra*, I deny as moot JOA defendants' summary judgment motion on claims eleven and twelve brought by Trustee Sender as assignee for Trustee Weinman. I deny the motion as to Appel defendants and defendant Brown.

The following facts are undisputed. As stated previously, in response to financial difficulties encountered in 1991, PMI created PM Denver, Inc., PMNC, Inc., PMSC, Inc., and PMN, Inc. as subsidiaries of PMI to implement a corporate restructuring. After PMI entered bankruptcy, Sender, its Trustee, filed bankruptcy petitions on behalf of the four subsidiaries and Weinman was appointed trustee for them. On December 2, 1996, the Bankruptcy Court entered an order that the bankruptcy cases of PMI and the four subsidiaries be jointly administered for procedural purposes only, pursuant to Rule 1015, Fed.R.B.P. On June 20, 1997, pursuant to Sender's motion, the Bankruptcy Court approved a restricted assignment (Assignment) between Sender and Weinman, Def.

MSJ Brief, Ex. A, whereby Weinman, as Trustee for the four subsidiary corporations, "assign[ed], transfer[red], and set[ ] over to [Sender], for purposes of collection only, all of [his] right, title, and interest in and to any and all causes of action or claims of [the estates.]" *Id.* at p. 2.

These defendants contend they are entitled to summary judgment as a matter of law, because under Colorado law, legal malpractice claims are non-assignable. Under the circumstances here, I disagree.

Whether a bankruptcy trustee may assign a legal malpractice claim against an attorney of an estate has not been addressed in the Tenth Circuit. However, in addressing this issue, bankruptcy courts in other circuits have given consideration to state law and public policy. *See In re J.E. Marion, Inc.*, 199 B.R. 635, 637 (Bank.S.D.Tex.1996); *In re White Crane Trading Co., Inc.*, 170 B.R. 694, 702 (Bankr.E.D.Cal.1994); *In re Ellwanger*, 140 B.R. 891 (Bankr.W.D.Wash.1992).

In the sole Colorado case addressing this issue, the Court of Appeals held that legal malpractice claims are not assignable. *Roberts v. Holland & Hart*, 857 P.2d 492, 495 (Colo.App.1993), *cert. denied*, 1993 LEXIS 728 (August 30, 1993). The *Roberts* court reasoned that legal malpractice claims involving matters of personal trust and personal service do not lend themselves to assignability because permitting the transfer of such claims would undermine the important relationship between an attorney and client. *Id.* The Court was persuaded, in part, by the reasoning in *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (1976):

[The] assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders ... who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession.... The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the al-

ready overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client. *Id.* at 397, 133 Cal.Rptr. at 87. These are valid concerns. However, *Roberts* and *Goodley* did not concern bankruptcy actions. Also, research fails to reveal a single case addressing the issue in this case; whether a legal malpractice claim may be assignable *between trustees* in federal bankruptcy.

Where, as here, the assignment of legal malpractice claims is between trustees with common interests and goals, the deleterious effects of allowing the assignment of legal malpractice claims is significantly mitigated. Assignment between trustees does not encourage unjustified suits or force attorneys to defend themselves against casual purchases of causes of actions. Nor will the assignment foster the establishment of a general market for such claims. Moreover, the potential threat to the sanctity of the attorney-client relationship is not present here. After Sender became trustee for PMI, he became the CEO, sole shareholder, and director of the four subsidiary corporations. Thus, Weinman's assignment of his authority as trustee to Sender, had the mere effect of returning to Sender the authority he had as CEO. Further, to the extent that an attorney-client relationship existed between Appel defendants and the subsidiary corporations, Sender, as CEO of these corporations, was privy to it. I also note that allowing assignability between trustees promotes the efficient administration of these bankruptcy estates which can only inure to the benefit of the estates' creditors. Therefore, I conclude, that Colorado's public policy against the assignment of legal malpractice claims does not, in the narrow circumstances here, preclude assignability of claims between bankruptcy trustees. Accordingly, I will deny the Appel defendants' motion for summary judgment on claim eleven on this basis. Having concluded that claim eleven is assignable, I do not address the legal defendants' argument that claim twelve is also unassignable.

Accordingly, it is ORDERED that:

1. the motion for judgment on the pleadings filed by defendants Appel, Frey & Lucas, P.C., Garry R. Appel, Esq., Johnson, Oldham & Angell, P.C., and Scott C. Brown, Esq. is DENIED on all grounds;

2. the motion for summary judgment filed by defendants Appel, Frey & Lucas, P.C. and Garry R. Appel, Esq. on claim eleven based on the statute of limitations and claim twelve as duplicative, is DENIED;

3. the motion for summary judgment filed by defendant Johnson, Oldham & Angell, P.C. on claims eleven and twelve based on the statute of repose is GRANTED;

4. defendant Johnson, Oldham & Angell, P.C. is DISMISSED from this action;

5. the motion for summary judgment filed by defendant Garry Brown, Esq. on claim eleven is DENIED;

6. the motion for summary judgment filed by defendant Johnson, Oldham & Angell, P.C. on claims eleven and twelve based on assignability is DENIED as moot;

7. the motion for summary judgment filed by defendants Appel, Frey & Lucas, P.C. and Garry R. Appel, Esq. on claims eleven and twelve based on assignability is DENIED;

8. the motion for summary judgment filed by defendant Scott C. Brown, Esq. on claims eleven and twelve based on assignability is DENIED;

9. defendant Brown's July 30, 1998 motion to supplement motion for summary judgment is GRANTED;

10. defendant Brown's March 13, 1998 motion for protective order is DENIED without prejudice;

11. plaintiff PMN, Inc.'s March 17, 1998 motion for order compelling discovery from defendant Appel is DENIED without prejudice;

12. plaintiff PMN, Inc.'s May 8, 1998 motion for order compelling discovery from defendant Aurora National Bank is DENIED without prejudice;

13. the discovery stay entered on May 27, 1998 is HEREBY LIFTED; and

14. a status conference will be held on 4/15/99 at 4:00 p.m., 1999 in Courtroom C–502, 1929 Stout Street, Denver, Colorado.