No. 19,414.

D. J. CROWLEY, ASSIGNEE, ETC. *v.* GEORGE GREEN, d/b/a ADAMS PACKING HOUSE, ETC., ET AL.
(365 P. [2d] 230)

Decided October 2, 1961.

Mr. ROBERT W. CADDES, Mr. JAMES B. RADETSKY, Mr. CHARLES J. ONOFRIO, for plaintiff in error.

Messrs. HARDING and HERRMANN, for defendant in error George Green.

*In Department.*

Opinion by MR. JUSTICE DAY.

PLAINTIFF in error was the plaintiff in the trial court and brought the action as assignee of Carpenter-Hetzler Co., a California corporation, seeking recovery of the purchase price of two pneudraulic lifts. We will refer to the assignor corporation as the Seller and to defendants by name.

The Rocky Mountain Provision Company, which at the time of the trial was a defunct and non-operating Colorado corporation, was made a defendant because the purchase was made in the name of that corporation and the purchase order was, in fact, made out to it. Also the lifts were transported in a truck of that company.

George Green, doing business under the names of Adams Packing Company and Adams Packing & Provision House, was made a defendant under the allegation that he was individually liable for the purchase price of the lifts under one or more of four alternative counts in

the complaint. They were: 1. That the defendant Rocky Mountain Provision Company was the alter ego of George Green; 2. That the purported sale of the lifts by the provision company to the defendant Green was for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness owing by the provision company to the seller; 3. That the transfer of the lifts by the provision company to defendant Green was not in compliance with the Bulk Sales Act and that Green is the receiver of the goods and accountable to plaintiff; 4. That the purchase by the provision company was ultra vires, and that Green, as an officer, director and stockholder of said company and purporting to act for it, knew that it was ultra vires; that the corporation had no use for the merchandise; was not in the business of buying such merchandise; was not in the business of buying such merchandise for re-sale; that it did not have the ability to pay for the same, and that Green knew that fact; that Green intended to appropriate the goods to his own use, which intention he did not disclose to the Sellers; that he did, in fact, obtain the merchandise for his own use and to defraud the Sellers. Green's answer was a general denial and the affirmative defense of purchase of the merchandise for valuable consideration.

The provision company did not appear at the trial, and suffered a default judgment. It makes no appearance in this court, hence as to it the judgment is final.

As to defendant Green, the court found that the Seller's claim against him individually or as doing business under the names alleged in the complaint, should be denied. Judgment in favor of Green followed, to which this writ of error is directed.

The court made findings as follows:

1. That at all times material herein George Green was acting in the capacity as an officer and director of the Rocky Mountain Provision Company;

2. That at no time did he act individually or for and in behalf of the Adams Packing Company or the Adams

Packing and Provision House in the purchase of the two pneudraulic lifts;

3. At no time material herein did he contract for himself individually or for the Adams Packing Company, or the Adams Packing and Provision House in the purchase of the said pneudraulic lifts.

The court made no findings on Green's affirmative defense of bona fide purchaser for value of the lifts from the provision company.

The various assignments of error may be resolved under the single question whether the judgment of the trial court is so contrary to the weight of the evidence and the inferences to be drawn therefrom as to compel a contrary conclusion. We hold at the outset that the evidence does not support the judgment; that the conflicts therein are not of material matters; that the court was led into error by adopting the erroneous assumption that because Rocky Mountain Provision Company was not solely owned by Green (he being an officer and director thereof) that in the transaction he was acting for the company and not for himself.

The evidence was that the Rocky Mountain Provision Company was organized primarily for the purchase and transportation of meat and food products, but did have the general powers to purchase any type of goods and merchandise and to buy, sell, deliver and deal in food products of all kinds, and to buy, sell, lease and rent equipment for the shipment of food products as well as other types of merchandise or equipment. Nevertheless, it was established that in the operations of the corporation, in which Green took a very personal and active part, buying and selling equipment was not a part of its business or activities, but it limited itself to the purchase and distribution of food and food products. Under the business being done it had no use for or would not have any use for the pneudraulic lifts involved.

The evidence further discloses that Green, on the other hand, was in the meat packing business, at the same

address out of which the provision company transacted its business; that the lifts were used in the slaughtering and processing of meat. It was further shown that Green personally made inquiry of the Sellers as to the equipment and personally ordered the same.

There is conflict in the testimony as to why the purchase was made in the name of the provision company. The Seller says that he was asked to put the purchase in the name of the provision company because by so doing the equipment could be transported in a provision company truck from California to Denver as its own merchandise, and that Green could thereby save himself freight charges since there was an empty provision company truck in the vicinity. Green contends that the provision company was buying it for the purpose of resale to someone on the open market with the tacit understanding that if no purchaser were found he would take it off the company's hands. Despite this conflict, the evidence is uncontradicted that soon after the arrival of the lifts, without any effort to offer the merchandise for sale in the open market or otherwise, the lifts ended up in Green's packing house where they remained and were used in his business, even up to the day of the trial. Neither at the time of delivery nor up to the time suit was filed, had Green paid the provision company, or any one else, for the lifts. The evidence is substantial that the provision company was in dire financial straits at the time of the purchase; could not and did not pay for the merchandise. The inference is strong that in such circumstances it is unlikely that it would undertake the business of buying two isolated items of equipment with the purpose of reselling them when there were no prospective customers therefor.

The only evidence supporting Green's contention that he made a bona fide purchase and made payment to the provision company for the lifts was his own statement that the provision company owed him money and he gave the company credit on his books for the value

thereof. How he could prefer himself as a creditor of the defunct corporation at the expense of the Seller and other creditors is not explained. It is also to be noted that he testified that the so-called payment through a credit memo was not made until several months after this suit was filed.

■ This is not the usual case where a conflict in the evidence, resolved by the trier of the facts, is binding on this court, nor is it a case which on undisputed evidence different inferences might be drawn by reasonable persons viewing and evaluating the same. It is not necessary to detail either the evidence offered by plaintiff or the admissions of Green to establish the inescapable fact that from the inception of the transaction the lifts were purchased by and for Green, and the corporation used only as a conduit through which the merchandise passed uninterruptedly from Seller to Green as the ultimate purchaser. Viewing the evidence in the light most favorable to Green's contention that he was a secondary purchaser for value and that the corporation bought the merchandise for resale for profit, he is in no position to retain the benefits of the transaction for the reason that as an officer and director of the provision company he will not be allowed to divert assets of the corporation to discharge the obligation to him to the detriment of other creditors. This principle was announced in *Gaskins v. Bonfils,* 79 F. (2d) 352 (District of Colorado) and in *Jackman v. Newbold,* 28 F. (2d) 107.

■ The general principle is announced in 19 C.J.S. §1391, p. 1109:

" * * * where the corporation is insolvent or has reached such condition that its directors or officers see that they must deal with its assets in the view of its probable suspension, they cannot use those assets to prefer themselves as creditors in respect of preexisting debts to the prejudice of other general creditors, * * *. The principle underlying the rule denying a preference is that the directors or managing agents of an insolvent

corporation are trustees for the creditors, as well as for the corporation, and will not be allowed to use the trust property for their own benefit to the disadvantage of other creditors, nor will they be allowed to use their position, with the superior knowledge or opportunity of acquiring information which it affords, to secure an advantage for themselves over other creditors. * * * "

In *Fishel v. Goddard,* 30 Colo. 147, 69 Pac. 607, this court followed the general law, and the following statement is apropos:

"The relationship of a director of a corporation to the legal entity which he represents is fiduciary, and the law treats him as a trustee in this respect (citing case). A purchase by him of corporate assets may not be void *ab initio* as to creditors, but he will not be permitted to reap a benefit to their detriment by dealing in them as a third party, because the law inhibits a trustee from speculating in the subject matter of his trust. Hence, it follows, that if he does purchase corporate assets he must account to those who have the right to demand it for the full value of the property so purchased (citing cases)."

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment in favor of the plaintiff and against the defendant Green, doing business as Adams Packing Company or as Adams Packing & Provision House for the full purchase price of the lifts in the undisputed amount of $1300.00 together with interest from the date of filing the complaint.

MR. JUSTICE DOYLE and MR. JUSTICE McWILLIAMS concur.