**Glen ANSTINE, U.S. Bankruptcy Trustee for Builders Home Warranty, Inc., Plaintiff–Appellee,**

**v.**

**Hugh ALEXANDER, a Colorado resident; Kevin M. Kuznicki, a Colorado resident; and Alexander Law Firm, P.C., f/k/a Alexander & Crabtree, P.C., a Colorado professional, corporation Defendants–Appellants.**

No. 03CA1037.

Colorado Court of Appeals, Division IV.

April 21, 2005.

Certiorari Granted Feb. 21, 2006.

Kerr, Brosseau, Bartlett, & O'Brien, LLC, Marc R. Brosseau, Dennis J. Bartlett, Denver, Colorado, for Plaintiff–Appellee.

McConnell, Siderius, Fleischner, Houghtaling, & Craigmile, LLC, Michael T. McConnell, Troy R. Rackham, Denver, Colorado, for Defendants–Appellants.

Opinion by: Judge GRAHAM.

Defendants, Hugh Alexander, Kevin M. Kuznicki, and the Alexander Law Firm, P.C. (attorneys), appeal the trial court's judgment entered on jury verdicts finding them liable for aiding and abetting the breach of the fiduciary duty owed by Andrew Jelonkiewicz to their client, Builders Home Warranty, Inc. (BHW), and BHW's creditors. Attorneys also appeal the trial court's order awarding attorney fees to Glen Anstine, U.S. Bankruptcy Trustee for BHW (Trustee). We vacate the judgment as to the imposition of joint liability, affirm it in all other respects, reverse the order awarding attorney fees, and remand for further proceedings.

Jelonkiewicz was the president of BHW which sold warranties for newly constructed homes and purchased insurance to cover its obligations on those warranties. From 1993 to 1998, BHW purchased insurance through two individuals who held themselves out as representatives and affiliates of a large insurance company. In 1998, as a result of a criminal investigation and prosecution of one of these individuals, BHW learned that they did not represent the company and that the insurance policies provided to BHW were fraudulent.

In response to these circumstances, BHW requested coverage from the insurance company that the fictitious agents purported to represent, arguing that the agents had apparent authority to bind the company. The insurance company denied coverage.

The attorneys, who acted as BHW's insurance counsel, suggested two options to BHW and its president. BHW could "warehouse" the premium payments it had received from warranty purchasers by placing them in escrow and using the account to purchase replacement coverage, or BHW could file bankruptcy. The president chose to pursue the warehousing option.

While BHW encountered difficulty finding replacement coverage, a BHW competitor filed suit in federal court seeking to enjoin BHW from selling warranties without insurance coverage because it was a deceptive and unfair practice which harmed the competitor and gave BHW an unlawful advantage. The president was again advised by the attorneys, and by another law firm that represented BHW in litigation matters, to file bankruptcy. The president chose to continue searching for replacement coverage.

In the continuing effort to find replacement coverage, the president was referred to a Swiss company known as Swiss Standard Trust Co. (SST). SST agreed to establish a new insurance company, Equitable Insurance Group, to provide insurance coverage for some of BHW's warranties. Two policies were issued by Equitable: one to cover warranties sold after May 1998, and another for warranties to be sold in the future. Neither policy covered warranties issued prior to May 1998. To obtain the policies, the president wired the funds in the premium escrow account to SST off shore.

After a hearing, the federal court enjoined BHW from the further sale of warranties until it received assurance that coverage from the Equitable policies was acceptable under various state insurance regulations. The court further ordered BHW to notify its customers that warranties sold before May 1998 were not insured and that policies for warranties sold after May 1998 were subject to court approval pending a decision by the insurance commission. BHW then filed for protection under the Bankruptcy Code.

Trustee brought suit against BHW's president and the attorneys. Trustee alleged that the attorneys committed legal malpractice and aided and abetted the president's breach of fiduciary duty to BHW and to its creditors by advising the president to warehouse the warranty premiums and, later, assisting the president to use those premiums to purchase unacceptable off-shore policies.

The jury found in favor of the attorneys on the malpractice claim, but rendered a verdict against them for aiding and abetting a breach of fiduciary duty. The jury's verdict apportioned fault, one percent to the attorneys and the remaining fault to the president pursuant to the comparative fault statute, § 13–21–111.5, C.R.S.2004.

The trial court then amended the verdict, concluding that the attorneys and the president were jointly liable under § 13–21–111.5(4), C.R.S.2004, and as a matter of law the apportionment was inapplicable. The trial court also awarded attorney fees to Trustee. This appeal followed.

I.

■ We first consider the threshold question of whether the trial court erred in concluding that Trustee had standing to pursue a claim against the attorneys for aiding and abetting a breach of fiduciary duty. We conclude that Trustee had standing.

■ The question of standing requires us to analyze whether the complaining party has alleged an actual injury from the challenged action and whether the claimed injury is to a legally protected or cognizable interest as contemplated by statutory or constitutional provisions. *Sender v. Kidder Peabody & Co.,* 952 P.2d 779 (Colo.App.1997).

■ Only the bankruptcy trustee has standing to assert claims that are the property of the bankruptcy estate. *Summers v. Perkins,* 81 P.3d 1141, 1142 (Colo.App.2003). A bankruptcy trustee's standing to pursue a cause of action must be derived from the United States Bankruptcy Code. Generally, a trustee has standing to pursue claims (1) brought in the shoes of the debtor pursuant to 11 U.S.C. § 541(a) and (2) brought in place of the debtor's creditors under one of the trustee's powers to avoid transfers and obligations of the debtor as a hypothetical lien creditor, pursuant to 11 U.S.C. § 544. *Sender v. Simon,* 84 F.3d 1299 (10th Cir.1996).

Section 544(a)(1) provides that the trustee shall have, as of the commencement of the case, the rights and powers of a "creditor that extends credit to the debtor ... and that obtains ... a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists."

■ As explained by the Tenth Circuit Court of Appeals:

[F]rom the reservoir of equitable powers granted to the trustee to maximize the bankruptcy estate, Congress has fashioned a legal fiction. Not only is a trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but the fiction permits the trustee also to assume the guise of a creditor with a judgment against the debtor. Under that guise, the trustee may invoke [the] remedies provided by state law to judgment lien creditors to satisfy judgments against the debtor.

*Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1523 (10th Cir.1990).

■ The rights provided to a trustee under § 544 are therefore measured by the substantive law of the jurisdiction governing the property in question. *In re Porter McLeod, Inc.,* 231 B.R. 786 (D.Colo.). In Colorado, a judgment lien creditor has the right to pursue all claims available to a debtor corporation before bankruptcy is declared. *See Ficor, Inc. v. McHugh,* 639 P.2d 385, 393–94 (Colo.1982). In the context of a breach of fiduciary duty claim, the trustee brings the claim under § 544(a) "in the name of the corporation for the benefit of all persons entitled to participate in the recovery." *In re Porter McLeod, Inc., supra,* 231 B.R. at 793 (quoting *Wieboldt Stores, Inc. v. Schottenstein,* 131 B.R. 655, 668 (N.D.Ill.1991)).

The trial court, in response to the attorneys' motion for summary judgment, held:

[Trustee] is standing in the shoes of a fictitious creditor seeking damages BHW sustained from [the president's] alleged breach of fiduciary duty.... The Court hereby finds, based upon the facts alleged in the First Amended complaint, [Trustee] has standing pursuant to 11 U.S.C. 544(a)

against [the president] for breach of fiduciary duty.

We agree with the trial court and conclude that § 544(a) affords Trustee standing as a fictitious judgment lien creditor. Here, any hypothetical judgment lien creditor would have standing to sue the attorneys for malpractice causing injury to BHW and to sue BHW's president for breach of his fiduciary duty to BHW and, if BHW was insolvent, for breach of his fiduciary duty to BHW's creditors. *See Ficor, Inc., supra* (permitting recovery by the corporation so that it may utilize the monies to satisfy unpaid creditors). Such a lien creditor would also have a cause of action against anyone who aided and abetted that breach of fiduciary duty. *See In re Porter McLeod, Inc., supra.* We therefore perceive no error in the trial court's conclusion.

The attorneys argue that Trustee cannot have standing because BHW, its president, and the attorneys were in pari delicto and, therefore, he is barred by BHW's illicit activity. The in pari delicto defense may be raised when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct. Under those circumstances, the parties are deemed in pari delicto, and the law will aid neither, but rather, will leave them where it finds them. *Sender v. Kidder Peabody & Co., supra.*

In bankruptcy, the doctrine applies only to the trustee in his status as "debtor" under § 541 of the bankruptcy code, and not to the trustee in his status as "creditor." *In re Porter McLeod, Inc., supra.* In the latter circumstance, the trustee is not stepping into the shoes of the debtor company, but is assuming the status of hypothetical lien creditors who had no part in the breach of fiduciary duty.

Because we conclude that Trustee had standing as a fictitious judicial lien creditor pursuant to § 544(a), and is therefore pursuing a claim as such a creditor, he is not deemed to be a participant in the president's breach of fiduciary duty. We therefore conclude that the doctrine of in pari delicto is inapplicable to Trustee, and we decline to follow cases holding the trustee was in pari

delicto in which standing was examined under § 541 only. *See, e.g., Sender v. Kidder Peabody & Co., supra* (trustee had no standing under § 541 because he was in pari delicto).

The attorneys also argue that Trustee did not have standing because the cause of action for aiding and abetting a breach of fiduciary duty belongs exclusively to BHW's creditors. The attorneys rely on *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 433–34, 92 S.Ct. 1678, 1688, 32 L.Ed.2d 195 (1972); *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d Cir.1991); and *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1094 (2d Cir.1995). We are not persuaded.

Here, the cause of action does not exclusively belong to creditors, but rather belongs to the debtor corporation, *see Ficor, Inc., supra,* as well as to hypothetical lien creditors who can avoid transfers and obligations on behalf of the debtor corporation. Standing is premised on a cause of action for breach of fiduciary duty that BHW or its lienholders may assert against the president and the attorneys for aiding and abetting the president. We therefore distinguish the cases cited by the attorneys wherein the cause of action belonged exclusively to a particular class of creditors.

## II.

■ The attorneys contend that they cannot be liable to BHW's creditors for aiding and abetting the president's breach of fiduciary duty to them because they did not owe a duty to third-party creditors. We disagree.

■ We begin our analysis with the concept that legal malpractice and aiding and abetting a breach of fiduciary duty are distinct and separate claims. *In re Porter McLeod, Inc., supra.* A cause of action for aiding and abetting a breach of fiduciary duty requires (1) breach by a fiduciary of a duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages. *Holmes v. Young,* 885 P.2d 305 (Colo.App.1994). A claim for legal malpractice requires proof of damages incurred by the plaintiff client and caused by the negligence of an attorney who owes a duty of care to the client. *Temple Hoyne Buell Found. v. Holland & Hart,* 851 P.2d 192, 198 (Colo. App.1992).

An attorney owes a duty to his client to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out the services for his client; the attorney does not owe such a duty to a nonclient. *Mehaffy, Rider, Windholz, & Wilson v. Cent. Bank Denver,* 892 P.2d 230 (Colo.1995).

The duty of care the attorneys owed to BHW as their client does not emanate from the fiduciary duty BHW's president owed to BHW. *See In re Porter McLeod, Inc., supra.* Thus, the jury's finding that the attorneys did not commit legal malpractice does not, as a matter of law, foreclose the possibility that they could be liable for aiding and abetting a breach of fiduciary duty owed to BHW, provided they knowingly participated in the president's breach. *See Holmes, supra.* The two duties existed independent of one another, and the attorneys could conceivably fulfill their duty to their client BHW while lending assistance to and aiding and abetting the president's breach of a separate duty to BHW and to third parties. We recognize that in this circumstance the only client to whom the attorneys owed a professional duty was BHW. *See* Rules of Professional Conduct § 1.13.

Here, the jury found that BHW's president breached the fiduciary duty he owed as a principal of BHW by warehousing premiums and transferring escrowed premiums off shore. The jury also found that the attorneys, in advising the president with regard to the warehousing procedure, aided and abetted the breach. We perceive no error of law in the jury's findings. Based upon the evidence that the attorneys gave some assistance in creating a fund for warehousing premiums and exporting the funds reserved for inadequate policies, the jury could have determined that conduct, other than rendering professional advice, amounted to aiding and abetting.

The attorneys argue that liability cannot be imposed upon a lawyer for aiding and abetting a breach of fiduciary duty owed by a

client to a third person who is not the lawyer's client. We recognize that ordinarily a lawyer does not owe a fiduciary duty to nonclients, even where the lawyer's client owes the nonclient a fiduciary duty. *See Turkey Creek, LLC v. Rosania*, 953 P.2d 1306 (Colo.App.1998)(absent a showing of malice, fraud, willful and wanton conduct, or any other circumstances giving rise to a duty of care, lawyers did not owe fiduciary duty to their client's partner in a joint venture). However, there is no requirement that an aider and abettor owe a fiduciary duty, or any other duty of care, to a party injured by the principal's breach. The attorneys cite no authority for the proposition that before one can aid and abet a breach of fiduciary duty, there must first exist a separate duty owed by the aider and abettor to the victim. To be liable as an aider and abettor requires only a knowing participation in the breach. *Holmes, supra.*

Furthermore, liability for aiding and abetting a breach of fiduciary duty was not imposed upon the attorneys for failure to perform any obligation arising in their capacity as lawyers. Indeed, the law does not insulate aiders and abettors from liability simply because they acted in the course of fulfilling separate and distinct duties as lawyers.

Here, after having been properly instructed as to the elements of the tort, the jury found that the attorneys knowingly participated in a breach of the president's duty to BHW and its creditors. We therefore will not overturn the jury's verdict.

## III.

The attorneys next contend that the trial court erred by amending its judgment based upon its own separate findings to hold them and the president jointly liable as a matter of law pursuant to § 13–21–111.5(4). We agree.

## A.

■ The trial court's decision to amend its findings, reopen the proceeding, or grant a new trial pursuant to C.R.C.P. 59(a) is subject to an abuse of discretion standard of review. *Buckley Powder Co. v. State,* 70 P.3d 547, 564 (Colo.App.2002).

■ A trial court may amend a jury's verdict as to form, but not as to substance. *South Park Aggregates, Inc. v. Northwestern Nat'l Ins. Co.*, 847 P.2d 218 (Colo.App.1992). A change in form may remedy inconsistency by correcting a technical error made by the jury, but it does not affect the underlying determination by the jury. *Weeks v. Churchill*, 44 Colo.App. 520, 615 P.2d 74 (1980).

Section 13–21–111.5 addresses the pro rata liability of multiple defendants in civil cases. Generally, the statute provides that "no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss, except as provided in subsection (4) of this section." Section 13–21–111.5(1), C.R.S.2004. By enacting this statute, the General Assembly intended to cure the perceived inequity under the common law doctrine of joint and several liability whereby wrongdoers could be held fully responsible for a plaintiff's entire loss, even though another person contributed to the wrongdoing. *Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 286 (Colo.2000).

However, the General Assembly reintroduced joint liability in 1987 when it amended the statute to include subsection (4), which provides that "[j]oint liability shall be imposed on two or more persons who *consciously conspire* and *deliberately pursue* a *common plan* or design *to commit* a tortious act." Section 13–21–111.5(4) (emphasis added). The subsection further provides that any person held jointly liable shall have a right to contribution from codefendants acting in concert.

■ To impose joint liability, there must be some indicia of an agreement sufficient to prove that the defendants consciously conspired and deliberately pursued a common plan or design that resulted in a tortious act. Evidence of a course of conduct from which a tacit agreement to act in concert may be implied is a sufficient basis to impose joint liability. A "tortious act" under the statute includes any conduct other than a breach of contract that constitutes a civil wrong and causes injury or damages. A "tortious act"

may include negligence. *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049 (Colo. 1995).

■■■ Here, after the close of evidence, the trial court reviewed Trustee's tendered instruction regarding joint and several liability. The attorneys objected to this instruction, arguing that § 13–21–111.5(4) exception was inapplicable because it dealt only with joint liability, but not joint and several liability. The attorneys also urged that the language providing for apportionment among joint tortfeasors was confusing.

The trial court agreed and commented, without further explanation, that it would decide the issue of joint liability "later." Neither party sought clarification or objected to this statement. The tendered instruction was not presented to the jury and was not preserved in the record when the jury was charged.

The jury returned a verdict finding that the attorneys had aided and abetted the president's breach of fiduciary duty, and it apportioned fault between them: one percent to the attorneys and ninety-nine percent to the president. In response to Trustee's post-trial motion to amend the judgment, the trial court found "as a matter of law that the jury's findings of breach of fiduciary duty and aiding [and] abetting [a] breach of fiduciary duty by the defendants, collectively, establish the concerted activity of the defendants so that imposition of joint liability against all defendants is mandated by the provisions of C.R.S. § 13–21–111.5(4)." The court also found that the attorneys and the president acted in concert and had a tacit agreement to pursue a course of conduct to warehouse premiums.

We conclude that the trial court erred in amending the judgment to impose joint liability because the elements necessary to find aiding and abetting liability do not, as a matter of law, include the elements necessary to find joint liability under § 13–21–111.5(4). *Cf. Nelson v. Elway,* 971 P.2d 245, 249–50 (Colo.App.1998)(a claim of aiding and abetting a breach of fiduciary duty is not identical to a claim of civil conspiracy).

Each case addressing joint liability presents unique factual circumstances requiring detailed factual findings. *Heiserman, supra,* 898 P.2d at 1057. The trial court's conclusion that a tacit agreement existed between the attorneys and the president may not be reached based on their liability for aiding and abetting alone. To impose joint liability, the jury would have been required to find that the attorneys and the president "consciously conspire[d] and deliberately pursue[d] a common plan or design to commit a tortious act." Section 13–21–111.5(4). When the trial court modified the verdict, it made a substantive change that affected the jury's underlying determination. The jury could have found that the attorneys engaged in conduct which lent substantial assistance so as to have aided and abetted the president, yet did not conspire with him and knowingly pursue a common plan to commit a civil wrong.

Here, the court should have instructed the jury on the elements necessary to find joint liability under § 13–21–111.5(4), as well as the elements necessary to find aider and abettor liability. "It is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent men can draw but one inference from them, that [a] question is ever one of law for the court." *Bailey v. King Soopers, Inc.,* 142 Colo. 338, 339, 350 P.2d 810, 811 (1960)(quoting *Swanson v. Martin,* 120 Colo. 361, 365, 209 P.2d 917, 919 (1949)).

## B.

We reject Trustee's argument that any error in not instructing the jury on the elements necessary to find joint liability was invited by the attorneys.

If the attorneys' actions in the trial court invited the error of which the attorneys complain on appeal, we will not reverse the judgment. *See Flexisystems, Inc. v. Am. Standards Testing Bureau, Inc.,* 847 P.2d 207, 209 (Colo.App.1992)(appellant's failure to object and to advise the court of its position invited the error).

We conclude that there was no invited error and no waiver created by the attorneys' objection to the joint liability instruction and

failure to object to the court's announcement that it would deal with the joint liability issue after the verdict. There are four reasons supporting our conclusions.

First, we are unable to conclude with certainty whether the attorneys' objection to Trustee's tendered instruction was legitimate. Although the parties agree that an instruction on joint liability was tendered, we are unable to determine whether it comported with the statute because the instruction was somehow omitted from the record.

Second, even though the attorneys objected to the tendered joint liability instruction, they also objected to the court's giving an allocation of fault instruction because it would confuse or mislead the jury. We conclude that giving an allocation of fault instruction and refusing to instruct the jury on joint liability may have misled the jury into believing that the attorneys could only be liable for aiding and abetting if and to the extent the jury chose to allocate fault. Under these circumstances, we cannot say that the attorneys invited this mistake.

■ Generally, it is within the sound discretion of the trial court to determine the form and style of instructions to be given to a jury. *Williams v. Chrysler Ins. Co.*, 928 P.2d 1375 (Colo.App.1996). That discretion may be abused if the instructions mislead or confuse the jury. *States v. R.D. Werner Co.*, 799 P.2d 427 (Colo.App.1990). However an improper jury instruction is not grounds for reversal unless it prejudices a party's substantial rights. *Phillips v. Monarch Recreation Corp.*, 668 P.2d 982 (Colo.App.1983).

A party's substantial rights are implicated and prejudiced where the record shows that a jury might have answered differently if a proper instruction had been given. *Webb v. Dessert Seed Co.*, 718 P.2d 1057 (Colo.1986).

It is not unlikely that the jury, believing that the attorneys were only one percent at fault on the aiding and abetting claim, would have refused to find that the attorneys conspired and knowingly pursued a common plan, if it had been properly instructed concerning the nature of joint liability.

Third, the court's order that it would handle the question of joint liability "later" could not have alerted the attorneys to the precise post-verdict procedure the court intended to adopt. Acquiescence in the trial court's failure to give a proper instruction does not signal the attorneys' agreement that the court was later entitled to find facts that were within the province of the jury.

Fourth, the attorneys and Trustee remained silent when the trial court stated that it would allow the jury to deliberate without the joint liability instruction. Both parties would have benefited from a proper instruction and both parties' counsel should have assisted in the crafting of a proper instruction.

Under these circumstances, we cannot agree that the attorneys invited the error or waived their right to have the matter properly determined.

We therefore reverse the trial court's order amending judgment to impose joint liability and remand for a new trial on the issue of joint and several liability only.

### IV.

The attorneys next contend that the trial court erred in dismissing the designation of certain nonparties. We disagree.

Under § 13–21–111.5(3), plaintiffs and defendants may designate nonparties as being wholly or partially at fault, and the fact finder may apportion a percentage of fault to a properly designated nonparty. *See Inland/Riggle Oil Co. v. Painter*, 925 P.2d 1083 (Colo.1996).

■ The jury must base its apportionment of nonparty fault on admissible evidence. *See* § 13–21–111.5(3)(a), C.R.S.2004. Thus, where a defendant designates a nonparty at fault but presents no evidence of liability, the court should not submit that claim to the jury. *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536 (Colo.1997). In a negligence action, a nonparty designation will be struck unless evidence demonstrating a prima facie case is set forth. *Stone v. Satriana*, 41 P.3d 705 (Colo.2002).

The attorneys assert that the trial court erred in striking their designation of (1)

BHW's other attorneys and (2) SST and Equitable Insurance Group.

### A.

The attorneys tendered jury instructions regarding the legal malpractice of the non-party attorneys. No instruction was tendered for aiding and abetting a breach of fiduciary duty. We will therefore principally review the record for prima facie evidence of professional negligence. *See Stone, supra.*

■ As a matter of law, to establish a legal malpractice claim, three elements must be proved: (1) the attorney owed a duty of care to the plaintiff; (2) the attorney breached that duty; and (3) the attorney proximately caused damage to the plaintiff. *Temple Hoyne Buell Found., supra.*

■ A prima facie case for legal malpractice requires an applicable standard of care. With regard to legal malpractice claims and other claims related to an attorney's duties to the client, expert testimony generally is required to establish the standard of care. *See Martinez v. Badis,* 842 P.2d 245, 252 (Colo. 1992).

■ Here, there was neither expert testimony nor any other evidence in the record to establish the standard of care applicable to the nonparty attorneys. Therefore, the attorneys failed to establish a prima facie case of negligence.

Furthermore, assuming, from the comments of the court, that the attorneys raised the nonparty liability for aiding and abetting a breach of fiduciary duty, the record reveals no evidence of such liability. The record indicates the nonparty attorneys had knowledge of the decision to warehouse premiums and that those attorneys advised BHW and its president in preparation for the federal court injunction hearing. However, there was no evidence that they advised the president in connection with the decision to warehouse premiums and transfer escrowed premiums off shore. *See Holmes, supra.*

### B.

BHW transferred funds to SST, to be held in escrow in a newly formed company, Equi-table Insurance Group. Equitable, in turn, issued policies backing BHW's warranties sold after 1998. After BHW filed for bankruptcy, Trustee demanded that SST and Equitable return the money BHW had transferred. When SST and Equitable failed to respond to the demand, the bankruptcy court entered judgment in favor of Trustee.

The record reveals no evidence upon which a cause of action could be asserted against SST or Equitable. We therefore conclude that the trial court did not err in dismissing SST and Equitable as nonparties.

### V.

The attorneys assert that the trial court erred in awarding Trustee attorney fees. We agree.

■ Colorado follows the American Rule that in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by a prevailing party in a tort action. *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.,* 97 P.3d 140 (Colo.App.2003). The Colorado courts have fashioned an exception to this rule in breach of trust actions where a fiduciary holds funds in trust for the benefit of a party who is ultimately injured by the breach. *Buder v. Sartore,* 774 P.2d 1383, 1391–92 (Colo.1989); *Heller v. First Nat'l Bank,* 657 P.2d 992, 999–1000 (Colo.App. 1982). This exception to the general rule, however, has been limited to circumstances involving a breach of trust. *Stevens v. Moore & Co. Realtor,* 874 P.2d 495, 497–98 (Colo.App.1994)(the exception did not apply where a fiduciary committed a wrongful act which did not involve the funds of a beneficiary). We are aware of no case in Colorado which expands the *Heller* rule to aiders and abettors who do not hold trust funds, and we discern no reason to do so.

■ Because the underlying breach of fiduciary duty here did not involve a trust, or other circumstances where a fiduciary is holding funds for the benefit of the injured party, we decline to follow the exception carved out in *Buder* and *Heller. See Ste-*

*vens, supra.* We therefore reverse the trial court's award of attorney fees.

The judgment is vacated as to the imposition of joint liability, the order awarding attorney fees is reversed, and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

Judge ROY and Judge WEBB concur.