Hugh ALEXANDER, a Colorado resident; Kevin M. Kuznicki, a Colorado resident; and Alexander Law Firm, P.C., f/k/a Alexander & Crabtree, P.C., a Colorado professional corporation, Petitioners

v.

Glen ANSTINE, a U.S. Bankruptcy Trustee for Builders Home Warranty, Inc., Respondent.

No. 05SC367.

Supreme Court of Colorado, En Banc.

Feb. 20, 2007.

McConnell Siderius Fleischner Houghtaling & Craigmile, LLC, Michael T. McConnell, Troy R. Rackham, Denver, Colorado, Attorneys for Petitioners.

Kerr Brosseau Bartlett O'Brien, LLC, Dennis J. Bartlett, Marc R. Brosseau, Denver, Colorado, Attorneys for Respondent.

Jaudon & Avery LLP, David H. Yun, Karen M. Kwon, Denver, Colorado, Attorneys for Amicus Curiae Colorado Bar Association.

Snell & Wilmer L.L.P., Marsha Piccone, Lee Mickus, Faegre & Benson LLP, David W. Stark, Holme Roberts & Owen L.L.P., Bruce F. Black, Jackson Kelly PLLC, Philip Cardi, Rothgerber Johnson & Lyons LLP, Frederick J. Baumann, Shughart Thomson & Kilroy P.C., John D. Phillips Denver, Colorado, Attorneys for Amici Curiae Law Firms.

Buchanan, Jurdem & Cederberg, P.C., James A. Cederberg, Denver, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Fish & Coles, D. Bruce Coles, Denver, Colorado, Attorneys for Amicus Curiae Jeffrey Hill, Trustee.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this appeal, we review and reverse *Anstine v. Alexander*, 128 P.3d 249 (Colo.App. 2005). The court of appeals in this case held that (1) a bankruptcy trustee has standing under section 544(a) of the Federal Bankruptcy Code to pursue a claim against a debtor corporation's attorneys for aiding and abetting a breach of fiduciary duty, and (2) a corporation's attorneys owe a duty to the corporation's creditors to refrain from aiding and abetting a corporate officer in breaching his fiduciary duty.

We disagree with the court of appeals' broad holding on the standing issue. Section 544(a) of the Bankruptcy Code creates the trustee's power to avoid transfers and obligations of the debtor, which includes the power to step into the shoes of a hypothetical creditor with a judgment lien against the debtor. A trustee's standing under section 544(a) is determined by the rights of a judgment lien creditor under state law.

The court of appeals' holding that Colorado law allows judgment lien creditors to bring any claim available to the debtor corporation misconstrues our prior cases. A hypothetical judgment lien creditor may only bring claims in the name of the corporation in limited circumstances as determined by statute. Under our common law, the creditors of an insolvent corporation are not owed general fiduciary duties by the corporation's officers and directors. Officers and directors of an insolvent corporation owe creditors a duty to avoid favoring their own interests over creditors' claims. This type of claim involving a violation of an insolvent corporate officer's duty was not alleged here. Thus, Anstine lacked standing to sue the attorney

defendants on the aiding and abetting claim because the claim against Builder's Home Warranty's president is not cognizable under Colorado law.

Because Anstine lacked standing to bring the aiding and abetting claim against the attorney defendants, we do not reach the second issue regarding whether an attorney can be held liable for aiding and abetting a breach of fiduciary duty to a non-client, and thus vacate Part II of the court of appeals' opinion, thereby leaving this issue for another day. We reverse the remainder of the court of appeals' decision and remand this case to be returned to the trial court to dismiss the aiding and abetting claim against the attorney defendants for lack of standing.

## II. Facts and Proceedings Below

Builder's Home Warranty was a corporation that sold warranties for newly constructed homes. BHW hired the attorney defendants, Hugh Alexander, Kevin M. Kuznicki, and the Alexander Law Firm, P.C. [to whom we refer collectively throughout as "the attorneys"], when it learned that it had purchased fraudulent insurance policies on warranties it had issued to its customers, effectively leaving its customers without insurance. After the insurance company refused to honor the fraudulent policies, the attorneys advised BHW's president, Andrew Jelonkiewicz, that the company had two options—either shut down the business and file for bankruptcy or "warehouse" its customers' premiums by putting the premiums in a separate escrow account while searching for replacement insurance coverage. Even though the attorneys advised the president that the warehousing option would be unlawful if BHW continued to issue warranties to new customers, the president of BHW selected this option. The attorneys then assisted the president in creating an escrow account for the insurance premiums by drafting an escrow agreement with another law firm hired by BHW. This escrow account was to be used to pay for replacement insurance coverage.

Before BHW had found replacement coverage, a competitor learned of the warehousing scheme and sought an injunction against BHW in federal court for unfair competition. The attorneys advised the president to file for bankruptcy, but the president chose to continue to seek replacement coverage. The president of BHW, with the help of the attorneys, then transferred the escrow funds to an offshore trust company which set up an unlicensed insurance company that issued policies not complying with state insurance requirements. When the federal court enjoined BHW from selling uninsured warranties and ordered BHW to inform its customers that their warranties were not backed by insurance, BHW filed for Chapter 7 bankruptcy.

BHW's bankruptcy trustee, Glen Anstine, sued the president of BHW for breaching his fiduciary duties to BHW and BHW's creditors. Anstine also sued the attorneys for malpractice and for aiding and abetting the president's breach of fiduciary duties to BHW and BHW's creditors by advising the president to warehouse the warranty premiums and assisting the president in purchasing the offshore insurance policies.[1]

The trial court concluded that Anstine had standing to bring the aiding and abetting claim against the attorneys under section 544(a) of the Bankruptcy Code. At trial, the parties presented conflicting expert testimony as to whether warehousing premiums is an accepted practice in the insurance business. The jury found that BHW was insolvent such that the president owed fiduciary duties to the creditors of BHW, that the president of BHW breached his fiduciary duties, and that the attorney defendants had aided and abetted the president in breaching his fiduciary duties. The jury also found, however, that the attorneys did not commit professional malpractice. The jury awarded over two million dollars in damages, allocating fault one percent to the attorneys and

1. Anstine's amended complaint alleges that BHW's president breached his fiduciary duty to BHW's creditors by:
(1) transferring assets of BHW to the offshore trust company without receiving fair consideration; (2) transferring BHW assets offshore such that payment of creditors' obligations was delayed; and (3) committing corporate waste by failing to protect BHW's assets to ensure they were used for proper corporate purposes.

ninety-nine percent to the president of BHW. The trial court amended the verdict to hold the president and the attorneys jointly liable pursuant to section 13–21–111.5(4), C.R.S. (2003).

The attorneys appealed the trial court's verdict, arguing that: (1) Anstine, as the bankruptcy trustee, lacked standing under section 544(a) of the Bankruptcy Code to pursue a claim against the attorneys for aiding and abetting a breach of fiduciary duty to BHW's creditors; and (2) the attorneys cannot be liable for aiding and abetting the president's breach of fiduciary duty to third party creditors because attorneys do not owe a duty to non-clients.[2] The attorneys did not appeal the jury's finding that BHW was insolvent.

As to the attorneys' first argument, the court of appeals upheld the trial court's ruling that the trustee has standing to bring a claim against the attorneys for aiding and abetting the president's breach of fiduciary duties to BHW's creditors. *Anstine*, 128 P.3d at 253. The court noted that a trustee stands in the shoes of a hypothetical judgment lien creditor when bringing a claim under section 544(a). *Id.* at 254 (citing *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir.1990)). The court of appeals reasoned that the rights provided to a trustee under section 544 of the Bankruptcy Code are defined by state law, and that under Colorado law, a judgment lien creditor has the right to pursue all claims available to a debtor corporation before bankruptcy is declared. *Id.* (citing *Ficor, Inc. v. McHugh*, 639 P.2d 385, 393–94 (Colo.1982)). The court stated that because BHW would have a claim against the president for breaching his fiduciary duty to the corporation, the trustee's standing extends to reach such a claim. *Id.* The court reasoned that creditors could bring such a claim against BHW's president in the name of the corporation under section 544(a). *Id.* Additionally, the court stated that if BHW was insolvent, then the trustee would have standing to bring a claim against the president for a breach of fiduciary duty owed directly to the creditors. *Id.* The creditors, reasoned the court, would also have standing to sue anyone who aided and abetted the president's breach of fiduciary duty, including the attorneys. *Id.* Hence, the court of appeals concluded that Anstine, standing in the shoes of a hypothetical judgment lien creditor, has standing to sue the attorneys. *Id.*

As to the attorneys' second argument, the court of appeals held that the attorneys may be held liable for aiding and abetting a breach of fiduciary duty that BHW's president owed to BHW's creditors. *Anstine*, 128 P.3d at 255. The court acknowledged that attorneys do not owe a fiduciary duty to non-clients, but reasoned that there is no requirement that an aider and abettor owe any duty to the party injured by the breach—only the principal breacher must owe a duty to the injured party. *Id.* at 255–56. The court concluded that anyone who knowingly participates in the principal's breach may be held liable for aiding and abetting the breach. *Id.* at 256. Hence, the court of appeals affirmed the jury verdict finding the attorneys liable for aiding and abetting the president's breach of fiduciary duty to BHW's creditors. *Id.*

We granted certiorari on two issues: (1) whether Anstine has standing under section 544(a) of the Bankruptcy Code to sue the debtor's lawyers for aiding and abetting a breach of fiduciary duty; and (2) whether a lawyer can be liable for aiding and abetting a client's breach of fiduciary duty to a non-client.[3] We begin with the threshold issue of standing and turn to the Federal Bankruptcy

---

2. The attorneys also argued that the trial court erred in imposing joint liability in the amended verdict. The court of appeals agreed and vacated the trial court's finding of joint liability. *Anstine*, 128 P.3d at 252.

3. We granted certiorari on the following questions:

1. Whether Colorado law recognizes a fiduciary duty owed by an insolvent debtor's officer to the debtor's creditors and, if so, whether 11 U.S.C. § 544(a) and Colorado law permit a bankruptcy trustee, acting as a hypothetical judgment lien creditor, to sue the debtor's lawyer for aiding and abetting the debtor's officer breach of this fiduciary duty.

2. Whether a lawyer can be liable for aiding and abetting a breach of fiduciary duty of his client's officer to a non-client.

Code and Colorado law to determine whether Anstine may bring a claim against the attorneys for aiding and abetting the president's breach of fiduciary duty.

## III. Analysis

### A. Trustee Standing Under the Bankruptcy Code

 A bankruptcy trustee has standing to bring two categories of actions: those available to the debtor corporation under section 541,[4] and those available to hypothetical judgment lien creditors under section 544.[5] *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir.1996). The issue on which we granted certiorari is whether Anstine has standing under section 544(a), stepping into the shoes of a hypothetical judgment lien creditor. Section 544(a) gives the trustee the power to avoid transfers and obligations of the debtor, including the power to bring claims that the debtor's creditors themselves could bring to satisfy judgments against the debtor under the applicable state law.[6] *Zilkha Energy Co.*, 920 F.2d at 1523.

 The scope of a trustee's standing under section 544(a) is determined by the rights that a judgment lien creditor holds against a corporate officer under state law. *Simon*, 84 F.3d at 1304; 5 *Collier on Bankruptcy* ¶ 544.05 (Lawrence P. King, ed. Matthew Bender 15th ed. rev.2006). Hence, to determine whether Anstine has standing to sue the attorneys for aiding and abetting the president's breach of fiduciary duty, we must determine whether judgment lien creditors may sue a corporation's president for a breach of fiduciary duty under Colorado law. To determine what claims are available to creditors, we now turn to an examination of the duties owed by the directors and officers of an insolvent corporation to the corporation's creditors.

### Duty Owed to Creditors

 Under Colorado law, directors and officers owe both statutory and common law duties to the corporation's creditors. Statutory duties include a duty not to vote for shareholder distributions that would preclude payment of corporate debts. § 7–106–401(3)(a), C.R.S (2006). Section 7–108–403(1) allows the corporation to recover corporate assets wrongfully distributed under this pro-

---

4. Section 541 creates the trustee's power to bring claims as a succession of rights of the debtor against third parties:

 (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

 (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

 11 U.S.C. § 541(a)(1) (2006).

5. Section 544 creates the trustee's power to step into the shoes of a hypothetical judgment lien creditor to attach or seize property transferred by the debtor to a third party prior to bankruptcy:

 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could

have obtained such a judicial lien, whether or not such a creditor exists; . . . .

11 U.S.C. § 544(a)(1).

6. This opinion deals solely with claims brought under section 544(a). Only claims directly available to hypothetical judgment lien creditors may be brought under section 544, while claims belonging to the corporation must be brought by the trustee under section 541. *See Simon*, 84 F.3d at 1305 n. 5 (noting that sections 541 and 544 are mutually exclusive "mirror images of one another," such that when the trustee proceeds on a state claim under section 541, the cause of action must belong to the debtor itself, but under section 544, the cause of action must belong to the debtor's creditors). *Contra Porter McLeod, Inc. v. Porter (In re Porter McLeod)*, 231 B.R. 786, 792–93 (D.Colo.1999) (holding that when more than one section of the Bankruptcy Code provides a trustee with authority to bring an action, the trustee may choose which provision under which to proceed). Hence, under the applicable Tenth Circuit law, only claims directly available to hypothetical judgment lien creditors may be brought by the trustee under section 544(a). *ms55, Inc. v. Gibson Dunn & Crutcher, LLP (In re ms55)*, 338 B.R. 883, 895–96 (Bankr. D.Colo.2006).

vision.[7] In *Ficor*, we held that creditors, as a group, also may seek relief directly against directors and officers who violate this statutory duty in the name of the corporation. *See* 639 P.2d at 392–94 (holding that creditors may bring a claim under section 7–5–114(3),[8] the then-existing version of section 7–108–403(1)). We reasoned that creditors could bring a claim in the name of the corporation under this statute because the purpose of the statute was to protect creditors' interests. *Id.* at 393.

■ The court of appeals erroneously concluded that our holding in *Ficor* means that "a judgment lien creditor has the right to pursue all claims available to a debtor corporation before bankruptcy is declared." *Anstine*, 128 P.3d at 254 (citing *Ficor*, 639 P.2d at 393–94). Based on its misinterpretation of *Ficor*, the court of appeals held that "any hypothetical judgment lien creditor would have standing . . . to sue BHW's president for breach of his fiduciary duty to BHW." *Id.*

*Ficor* does not support the broad conclusion of the court of appeals. The purpose of the statute at issue in *Ficor* was to prevent directors from voting to distribute assets to shareholders before paying the corporation's creditors. 639 P.2d at 392–93. We reasoned that because the purpose of the statute is to protect creditors' claims against the corporation, to deny creditors standing under the statute would frustrate its purpose. *Id.* at 393–94. Because our holding was based on the specific purpose of the statute to protect creditors' interests during dissolution, our

reasoning in *Ficor* is not broad enough to reach claims brought outside of that statutory realm. *Ficor* extended a specific statutory right of the corporation to creditors when their claims are precluded by improper distributions to shareholders. This case did not confer general standing on creditors to bring claims belonging to the insolvent corporation. *Accord ms55*, 338 B.R. at 896 n. 6. Anstine does not allege a breach of a statutory duty in this case, so we focus on the common law duty owed to creditors.

■ Under the common law, when a corporation becomes insolvent, a duty arises in its directors and officers to the corporation's creditors.[9] *Crowley v. Green*, 148 Colo. 142, 147, 365 P.2d 230, 232–33 (1961). It has been said that directors and officers of an insolvent corporation are "trustees" for the corporation's creditors. *Id.* The trustee role with regard to creditors does not encompass the full set of fiduciary duties owed by directors and officers to shareholders of a solvent corporation. Rather, it is a limited duty that requires officers and directors to avoid favoring their own interests over creditors' claims. *See id.*; 3 *Fletcher Cyc Corp* § 1015 (Perm. Ed.) ("Under the common law, a director of an insolvent corporation is deemed to be a trustee for it and its creditors and, as such, owes a duty to the corporation and its creditors not to divert corporate property for his or her own benefit." (citing *Walk–In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 778 F.Supp. 1116 (D.Colo.1991))).

7. Section 7–108–403(1), C.R.S. (2006), provides, in pertinent part:
 A director who votes for or assents to a distribution made in violation of section 7–106–401 [which disallows shareholder distributions that would preclude payment of debts] or the articles of incorporation is personally liable to the corporation for the amount of the distribution that exceeds what could have been distributed without violating said section or the articles of incorporation. . . .

8. Section 7–5–114(3), C.R.S. (1973), is substantially similar to section 7–108–403(1), C.R.S. (2006), the current version of that statute, in that it creates a remedy for a corporation where its directors and officers have wrongfully authorized a shareholder distribution that precludes payment of corporate debt. It provided:
 The directors of a corporation who vote for or assent to any distribution of assets of a corpo-

ration to its shareholders during the liquidation of the corporation without the payment and discharge of, or making adequate provision for, all known debts, obligations, and liabilities of the corporation shall be jointly and severally liable to the corporation for the value of such assets which are distributed, to the extent that such debts, obligations, and liabilities of the corporation are not thereafter paid and discharged.

9. A 2006 amendment to the Colorado Revised Statutes, which does not apply to this case, states that directors and officers of corporations owe no fiduciary duties to the corporation's creditors. § 7–108–401(5), C.R.S. (2006). We express no opinion on whether this provision applies where a corporation is insolvent.

In *Crowley*, for example, we held that the directors of an insolvent corporation cannot favor themselves over other creditors to the prejudice of those creditors. 148 Colo. at 147, 365 P.2d at 232–33. Our court of appeals has decided several cases employing the same reasoning. *E.g., New Crawford Valley, Ltd. v. Benedict,* 877 P.2d 1363, 1368–69 (Colo.App.1993) (holding that the directors of an insolvent corporation owe a duty to corporate creditors not to transfer corporate property for their own benefit); *Collie v. Becknell,* 762 P.2d 727, 731 (Colo.App.1988) (holding that directors of an insolvent corporation have a duty to corporate creditors not to divest corporate property for their own benefit such that they defeat a creditor's claims).

■■■ We have never recognized a duty to creditors broader than this and have not defined the duty owed to creditors as fiduciary in the usual sense. *See New Crawford Valley, Ltd.,* 877 P.2d at 1369 (noting that "it may be fairly debatable whether the duty owed is that of a fiduciary nature"); 1 Cathy Stricklin Krendl & James R. Krendl, *Colorado Methods of Practice* § 1.66, at 177 (6th ed.2005) (noting that "the nature of the duty of directors to creditors of an insolvent corporation may not be a fiduciary duty"). *Accord* 18B *Am.Jur.2d Corporations* § 1588 (2004) ("the statement that an officer or director is a fiduciary for the corporation's creditors is not true in a technical or general and unlimited sense"). In the context of a breach of fiduciary duty claim against a corporate officer, creditor claims are limited to cases where officers or directors have favored their interests over creditors' claims.[10]

Because Anstine does not argue that the president's warehousing scheme involved favoring the president's interests to defeat creditors' claims, Anstine failed to allege that the president breached his limited fiduciary duty to BHW's creditors. Thus, Anstine's claim against the attorneys for aiding and abetting the president's breach of fiduciary duty also fails for a lack of standing.

## B. Lawyer Liability for Aiding and Abetting a Breach of Fiduciary Duty to a Non–Client

Our holding as to the first issue necessarily determines the outcome of this one. Because we conclude that Anstine failed to allege that BHW's president breached a fiduciary duty owed to BHW's creditors, on the facts of this case the attorneys cannot be liable on Anstine's aiding and abetting claim. We save for another day the question of whether an attorney can ever be liable for aiding and abetting a breach of fiduciary duty to a non-client.

## IV. Conclusion

We hold that Anstine failed to establish that the president of BHW breached a fiduciary duty owed to BHW's creditors, such that Anstine lacks standing under section 544(a) of the Bankruptcy Code to bring a claim against the attorneys for aiding and abetting the president's breach. We therefore reverse the court of appeals' decision and remand this case to the court of appeals to be returned to the trial court to dismiss the claim against the attorneys for aiding and abetting a breach of fiduciary duty. We vacate Part II of the court of appeals' opinion regarding the liability of attorneys for aiding and abetting a breach of fiduciary duty to a non-client.

---

10. We note that recognizing a limited duty owed to creditors is consistent with the law of other states. 3 *Fletcher Cyc Corp, supra,* § 849, p. 224 ("It is unlawful for corporate directors to manipulate corporate property so as to pay their own claims against the company to the loss of the creditors." (citing state cases)); *Prime Leasing, Inc. v. Kendig,* 332 Ill.App.3d 300, 265 Ill.Dec. 722, 773 N.E.2d 84, 97 (2002) (noting that the fiduciary duty owed to creditors when a corporation is insolvent is "at heart, an antipreference rule, which holds directors liable for preferring

one group (shareholders, creditors, or employees) unfairly over another"); *Keener Lumber Co. v. Perry,* 149 N.C.App. 19, 560 S.E.2d 817, 824 (2002) (holding that the fiduciary duty owed to creditors is breached if the directors take advantage of their position for their own benefit at the expense of other creditors); *Beloit Liquidating Trust v. Grade,* 270 Wis.2d 356, 677 N.W.2d 298, 309 (2004) (holding that once a fiduciary duty is owed to creditors because of insolvency, directors may not prefer themselves over general creditors).